**Richard MERRITT and Mary–
Jo Merritt, Plaintiffs,**

v.

**SHUTTLE, INC., U.S. Airways, Inc., Terry V. Hallcom, Joseph McNeil, John Blankenship, Kevin O'Donnell, Kent Jarrell, WUSA Television, Steven K. Wilson and John Does 1 through 50, in their individual capacities, the last 50 names being fictitious names of employees of Shuttle, Inc., U.S. Airways, Inc. and Federal Aviation Administration, Defendants.**

No. 97–CV–2986 (TCP).

United States District Court,
E.D. New York.

July 15, 1998.

372

Richard Merritt, Lido Beach, NY, pro se.

Richard Merritt, Lido Beach, NY, for Mary–Jo Merritt

Jeffery I. Kohn, O'Melvery & Meyers, New York City, for Shuttle, Inc., U.S. Airways Inc., Steven K. Wilson.

Patrick P. Salisbury, Salisbury & Ryan, L.L.P., New York City, for Terry V. Hallcom.

Marianne Finnerty, U.S. Dept. of Justice, Torts Branch, Civil Division, Washington, DC, for Joseph McNeil, John Blankenship, Kevin O'Donnell, Kent Jarrell, WUSA Television, United States of America.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Defendant U.S. AIRWAYS, INC. ("US Airways") moves pursuant to Rule 12(b)(6) to dismiss the First Amended Complaint. Defendants UNITED STATES OF AMERICA, KEVIN O'DONNELL, JOHN BLANKENSHIP and JOSEPH McNEIL (collectively, "the federal defendants"), SHUTTLE, INC. ("Shuttle"), TERRY HALLCOM ("Hallcom") and STEVEN WILSON ("Wilson") move to dismiss the First Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6) and 12(c) on the ground that this Court lacks subject matter jurisdiction or, alternatively, for failure to state a claim.[1] Defendants WUSA TELEVISION ("WUSA") and KENT JARRELL ("Jarrell") move to dismiss the First Amended Complaint pursuant to Rules 12(b)(2) and 12(b)(6) on the basis that this Court lacks personal jurisdiction over these defendants or, alternatively, for failure to state a claim.

## BACKGROUND

Plaintiff RICHARD MERRITT ("Merritt") worked for Shuttle as a pilot. On June 24, 1996, he was the captain of a Boeing 727 assigned to fly flight number 6500 from Washington National Airport to LaGuardia Airport. Plaintiff claims that he was told to proceed to his aircraft for an early departure at 4:15 p.m. that afternoon. Merritt claims that between 4:30 p.m. and 5:00 p.m., that same day, Shuttle, U.S. Airways and Federal Aviation Administration ("FAA") employees received information about severe weather—including a possible tornado—rapidly approaching Washington National Airport. Merritt avers that Shuttle and FAA employees failed to advise him of those warnings and directed him to take off. At 5:11 p.m., while FAA personnel were preparing to evacuate the flight tower, flight 6500 was cleared for takeoff. The severe weather passed directly over Washington National Airport as Merritt was taking off, causing a windshear that forced the 727's left wing to hit the runway just as it became airborne.

---

1. The United States filed a Notice of Substitution, arguing that the Federal Tort Claims Act mandates the substitution of the United States as a party for the three federal employee defendants.

Merritt contends that Shuttle and FAA employees knew that the left wing of the aircraft had been damaged upon takeoff but failed to inform the crew of flight 6500. Merritt ultimately landed safely in New York. Merritt claims that he was detained for six hours upon his arrival while Shuttle employees altered aircraft log books. The next day, Merritt refused Shuttle management's order to undergo FAA interrogation regarding the incident because he believed that the order violated federal air regulations. Allegedly acting in conspiracy, U.S. Airways and Shuttle management and FAA personnel subsequently contacted the news media and reported that Merritt's own poor judgment caused the incident. The FAA revoked Merritt's pilot license at an emergency hearing and, after a review by the National Transportation Safety Board ("NTSB"), modified the revocation to a nine-month suspension. Thereafter, plaintiff was terminated from his employment by defendant Wilson. Plaintiff alleges that the grievance proceedings held to review his termination were tainted.

In the First Amended Complaint, plaintiff asserts several causes of action, including claims for negligence (first and second counts), violation of constitutional rights (third count), defamation (fourth count), violations of the Railway Labor Act, 45 U .S.C. § 151 *et seq.* ("RLA") (sixth count), violations of the Employee Retirement Income Security Act of 1974 ("ERISA") (seventh count), violations of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") (ninth count) and violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") (tenth count).[2] Plaintiff's wife MARY–JO MERRITT asserts a claim for loss of consortium (eighth count).

## DISCUSSION

### A. Claims Against WUSA and Jarrell

Defendant WUSA and its announcer Jarrell move to dismiss the First Amended Complaint pursuant to Rule 12(b)(2) for lack of personal jurisdiction and Rule 12(b)(6) for failure to state a claim.

According to Rule 12(b)(2), a complaint is subject to dismissal when the court lacks jurisdiction over the person upon whom it is served. Fed.R.Civ.P. 12(b)(2). When a defendant challenges personal jurisdiction by a motion to dismiss, the burden is on the plaintiff to prove jurisdiction. *Metropolitan Life Ins. Co. v. Robertson–Ceco Corp.,* 84 F.3d 560, 566 (2d Cir.1996). In an action based upon diversity of citizenship, New York law determines whether a defendant who has not consented to jurisdiction is amenable to suit. *See Savin v. Ranier,* 898 F.2d 304, 306 (2d Cir.1990).

New York's Civil Practice Laws and Rules ("CPLR") § 301 provides: "A court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore." (McKinney 1990). Decisional law prior to and continuing under the CPLR, therefore, is the basis for determining whether a court may exercise jurisdiction over defendants who do not consent. *FCNB Spiegel Inc. v. Dimmick,* 163 Misc.2d 152, 619 N.Y.S.2d 935, 937 (1994). According to case law, a foreign corporation "doing business" within the state subjects itself to personal jurisdiction as long as it does business "not occasionally or casually, but with a fair measure of permanence and continuity . . . ." *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915 (1917). This principle was extended to apply to individual defendants in *ABKCO Indus., Inc. v. Lennon,* 85 Misc.2d 465, 377 N.Y.S.2d 362, 366–67 (1975).

Plaintiffs' First Amended Complaint fails to allege that either WUSA or Jarrell engaged in any activities that constitute "doing business" in the State of New York. Indeed, the First Amended Complaint fails to recite a basis upon which the New York courts may exercise personal jurisdiction at all. *See* Compl. at ¶ 14. Rather, it is only in plaintiffs' opposition to this motion that plaintiffs allege defendants have any New York contacts at all by arguing that WUSA sells videotapes and written transcripts of its broadcasts in a mail order business. Pls.' Mem. at 16. Moreover, the opposition is

---

**2.** These motions do not address the ERISA and COBRA counts.

silent regarding Jarrell's contacts with the State of New York.

The jurisdictional omission in the First Amended Complaint notwithstanding, even assuming plaintiffs' allegations in their opposition are true and WUSA indeed directs mail orders into New York, WUSA's contacts with New York as described here do not subject it to personal jurisdiction. *Honda Assoc., Inc. v. Nozawa Trading, Inc.,* 374 F.Supp. 886, 890 (S.D.N.Y.1974). The test of jurisdiction is whether

> the aggregate of the corporation's activities in the state [is] such that it may be said to be present in the state not occasionally or casually, but with a fair measure of permanence and continuity ... and [whether] the quality and nature of the corporation's contacts with the state [are] sufficient to make it reasonable and just according to traditional notions of fair play and substantial justice that it be required to defend the action [in the state.]

*Diskin v. Starck,* 538 F.Supp. 877, 880 (E.D.N.Y.1982) (quoting *Laufer v. Ostrow,* 55 N.Y.2d 305, 309–10, 449 N.Y.S.2d 456, 434 N.E.2d 692 (1982)) (ellipsis in original).

 The quality and nature of WUSA's and Jarrell's contacts with New York are insufficient to require them to defend this action. For instance, WUSA's broadcast signal does not reach New York; neither WUSA nor its parent corporation, The Detroit News, Inc., which is incorporated and has its principal place of business in Michigan, are qualified to do business in New York; and neither entity owns any property in the State. Jarrell does not own property in New York and has not lived here for twenty years. Indeed, the only jurisdictional allegation plaintiffs make against Jarrell is: "Defendant Kent Jarrell was at all relevant times employed as a television commentator or announcer for defendant WUSA Television or Channel 9 Television in the District of Columbia and/or [S]tate of Virginia. Upon information and belief [Kent Jarrell] resides in either the [S]tate of Virginia or Maryland." Compl. at ¶ 13.

Therefore, this Court may not properly exercise jurisdiction over WUSA or Jarrell pursuant to CPLR § 301.

Moreover, jurisdiction over WUSA and Jarrell is inappropriate under CPLR § 302(a)(1), which provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent ... transacts any business within the state or contracts anywhere to supply goods or services in the state ....

N.Y. C.P.L.R. § 302(a)(1) (McKinney 1990).

 Although a defendant need not engage in "systematic and continuous" transactions in New York, there must be a direct and substantial relationship between the in-state activities and the cause of action. *Diesel Sys., Ltd. v. Yip Shing Diesel Eng'g Co.,* 861 F.Supp. 179, 182 (E.D.N.Y.1994). WUSA and Jarrell argue that plaintiffs' libel claim is not substantially related to the transaction of their business in New York. Defendants contend that "[p]laintiffs' cause of action against WUSA and Jarrell is predicated on news reports televised in Washington, D.C .... not ... any purported mail order activity ...." Defs.' Reply Mem. at 3. Indeed, WUSA's sole in-state activity is filling orders for videotapes and written transcripts of its broadcasts and mailing them to New York. The libel claim does not arise from defendant's delivery of mail orders to New York. Therefore, this Court may not properly exercise long-arm jurisdiction under § 302(a)(1).

Finally, this Court may not exercise jurisdiction pursuant to §§ 302(a)(2) or (3) because both sections unambiguously exempt "cause[s] of action for defamation of character arising from [a tortious] act[,]" and here, plaintiffs allege defamation claims. N.Y. C.P.L.R. §§ 302(a)(2), (3) (McKinney 1990).

Because this Court concludes it may not properly exercise jurisdiction over WUSA and Jarrell, defendants' motion to dismiss is granted.[3]

---

**3.** Accordingly, this Court need not address whether the First Amended Complaint fails to state a claim against these defendants.

## B. Claims Against the United States, O'Donnell, Blankenship and McNeil

The federal defendants move to dismiss the First Amended Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) contending that: (1) the United States Court of Appeals has exclusive jurisdiction to review FAA decisions; (2) the discretionary function exception embodied in 28 U.S.C.A. § 2680(a) bars claims arising out of conduct that is a matter of choice for a federal official; (3) 28 U.S.C. § 2680(h) bars the claims for libel and slander; and (4) the United States did not consent to be sued for constitutional torts. Additionally, the individual federal defendants move pursuant to Rule 12(b)(6) claiming that: (1) they are entitled to qualified immunity; and (2) the First Amended Complaint fails to state a claim for constitutional violations.

## 1. Jurisdiction to Review Constitutional Violations Related to the Suspension of Plaintiff's Pilot License

In sum, the federal defendants contend that this Court lacks subject matter jurisdiction because the United States Court of Appeals has exclusive jurisdiction to review certificate actions issued by the NTSB and FAA pursuant to 49 U.S.C. § 46110(a) (1998). Because this Court concludes that plaintiff is not seeking review of the revocation of his pilot license but rather judicial determination of his claim of conspiracy to deprive him of his constitutional rights, this Court has subject matter jurisdiction.

Defendants characterize plaintiff's cause of action as an "impermissible attempt to challenge in tort the administrative processes involved in the Federal Aviation Administration (FAA) enforcement action against him."[4] Defs.' Mem. at 1–2. Applying this description, defendants assert that plaintiff's conspiracy claim is nothing more than a collateral attack on the revocation of his pilot license.[5]

In support, the federal defendants rely heavily on *Green v. Brantley*, 981 F.2d 514 (11th Cir.1993). In *Green*, the designated pilot examiner for the FAA filed a *Bivens* action against FAA officials seeking recovery for constitutional torts based on revocation of his certificate of authority. The Eleventh Circuit Court of Appeals, in holding that the district court lacked subject matter jurisdiction over the *Bivens* claim, identified Green's claims as based on procedural defects and the reasons for the FAA order. *Id.* at 519. The Court emphasized that Green never sought review of the order that withdrew his certificate of authority, choosing instead to sue FAA officials for money damages. *Id.* at 517–18.

However, plaintiff's claims here are distinguishable from *Green*. The key distinction is that here, plaintiff *did* appeal the revocation of his license. As a result, the revocation was reduced to a nine-month suspension. Plaintiff appealed the suspension to the full board of the NTSB but then decided to withdraw his appeal. Consequently, plaintiff is not alleging a due process violation arising out of the suspension of his license by the NTSB. Also, he does not question the motives of either the Administrative Law Judge ("ALJ") or the NTSB. Instead, plaintiff alleges a conspiracy to deprive him of rights guaranteed by the Constitution.

Although the United States Court of Appeals retains exclusive jurisdiction to review certificate actions issued by the NTSB and the FAA, this Court may evaluate plaintiff's constitutional claims as these claims are not "inescapably intertwined with a review of the procedures and merits surrounding the FAA's" revocation of plaintiff's pilot license. *Id.* at 521.

---

4. Defendant, Shuttle, asserts a similar argument in its motion to dismiss contending that plaintiff: further declined to appeal the [NTSB] decision to an appropriate federal appellate court pursuant to 49 U.S.C. § 46110(c). Instead, he brought this action against the Shuttle, its CEO, Chief Pilot and other parties. In so doing, plaintiff improperly attempts to circumvent the federal statute providing the only means for appeal of adverse NTSB rulings. Shuttle's Mem. at 15.

5. This Court denies Shuttle's motion to dismiss for lack of subject matter jurisdiction employing the same analysis set forth herein.

**380**

### 2. Discretionary Function Exception to the Federal Tort Claims Acts

Next, the federal defendants contend that the discretionary function exception to the Federal Tort Claims Act ("FTCA") deprives this Court of subject matter jurisdiction. According to this principle, courts lack subject matter jurisdiction to adjudicate tort claims resulting from federal defendants' performance of discretionary functions. *Garcia v. United States*, 826 F.2d 806, 809 (9th Cir.1987). More specifically, the discretionary function exception provides that no liability shall lie for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U .S.C. § 2680(a) (1994).

According to *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), for the discretionary function exception to apply: (1) the challenged conduct must be a "matter of choice for the acting employee"; and (2) the "judgment [must be the type] that the discretionary function exception was designed to shield." Defendants correctly conclude that "[b]ecause the FAA inspectors are charged to use their own independent judgment in choosing enforcement actions and sanctions within certain parameters [pursuant to FAA regulations], their conduct clearly meets the first prong of the *Berkovitz* test." Defs.' Mem. at 10. Nevertheless, this Court concludes that the challenged conduct is not the kind that the discretionary function exception was intended to shield.

According to *United States v. Gaubert*, 499 U.S. 315, 324–25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Here, the First Amended Complaint alleges that the federal defendants acted in a manner not grounded in FAA policy but, rather, conspired to place blame upon plaintiff. *See* Compl. at ¶ 43–44. The allegations in the First Amended Complaint overcome the "strong presumption that a discretionary act authorized by the regulation involve[d] consideration of the same policies which led to the promulgation of the regulations." *Id.*' at 324, 111 S.Ct. 1267. Moreover, the investigation conducted by the federal defendants occurred at an "operational" (as opposed to "planning") level of government. *Nevin v. United States*, 696 F.2d 1229 (9th Cir.), *cert. denied*, 464 U.S. 815, 104 S.Ct. 70, 78 L.Ed.2d 84 (1983). Although there was room for discretion, the course of action the federal defendants selected did not implicate social, political or economic policy considerations. *Mattice v. United States*, 752 F.Supp. 905, 906 (N.D.Cal.1990). Because this Court concludes that the discretionary function exception does not absolve the government from liability for the acts of the individual federal defendants, the motion is denied.

### 3. First Amendment Claim

The United States argues that the First Amendment claim should be dismissed pursuant to Rule 12(b)(6), contending that although plaintiff claims to allege a constitutional violation, effectively, he asserts a common law tort claim. This claim, defendants aver, is barred by the FTCA which provides:

> "[t]he provisions of [the FTCA] ... shall not apply to-
>
> (h) [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, *libel, slander,* misrepresentation, deceit, or interference with contract rights ...."

28 U.S.C. § 2680 (1994) (emphasis added).

In paragraph 56 of the First Amended Complaint plaintiff alleges, in pertinent part, "USAir management, Shuttle management and FAA personnel contacted the news media and gave false and misleading reports claiming that Richard Merritt intentionally made a takeoff in a thunderstorm and/or tornado and that the captain used poor judgment."

On its face, this allegation fails to implicate the First Amendment right to free speech and more appropriately is understood

to be a claim for libel and slander. However, these claims are barred by 28 U.S.C. § 2680(h) because the government has not waived its sovereign immunity for libel and slander. *B & A Marine Co. v. American Foreign Shipping Co.*, 831 F.Supp. 91, 93 (E.D.N.Y.1993), *aff'd*, 23 F.3d 709 (2d Cir. 1994), *cert. denied*, 513 U.S. 961, 115 S.Ct. 421, 130 L.Ed.2d 336 (1994). The Ninth Circuit Court of Appeals has held that exceptions to the FTCA "are not to be nullified through judicial interpretation, since Congress clearly delineated the areas in which it did not intend to forfeit [the federal government's] immunity from suit." *Builders Corp. of America v. United States*, 320 F.2d 425, 426 (9th Cir.1963). Here, the First Amended Complaint, insofar as it could be construed as seeking recovery for an act of libel by federal officials, is insufficient to state a cause of action because it is an attempt to bring an unconsented-to action against the United States. *Benjamin v. Ribicoff*, 205 F.Supp. 532, 533 (Mass.Dist.Ct.1962).

Accordingly, plaintiff's First Amendment claim against the United States is dismissed because it is effectively a tort claim which is barred by the libel and slander exceptions to the FTCA.

### 4. Fourth Amendment Claim

■ O'Donnell, Blankenship and McNeil (collectively, "the individual federal defendants") move to dismiss plaintiff's Fourth Amendment claim, alleging that the doctrine of qualified immunity shields them from suit and that plaintiff fails to allege a Fourth Amendment violation with specificity.[6]

Plaintiff alleges that "defendant Wilson did not allow plaintiff, Richard Merritt[,] to rest or receive medical attention but ordered him confined for some six (6) hours before administering tests for alcohol and drugs which tests were unnecessary and produced negative results." Compl. at ¶ 48. Plaintiff contends that when Wilson ordered plaintiff back to Shuttle offices to be interrogated by

O'Donnell and Blankenship, the individual federal defendants violated his constitutional rights-apparently referring to his Fourth Amendment right to be free from governmental seizure. Compl. at ¶ 49. Moreover, plaintiff seems to allege that Wilson's order that he return to Shuttle offices for interrogation violated unspecified federal air regulations. Compl. at ¶ 50.

■ To assert a Fourth Amendment claim for seizure, plaintiff must allege an unreasonable: "(1) governmental (2) termination of freedom of movement (3) through means intentionally applied." *Loria v. Town of Irondequoit*, 775 F.Supp. 599, 603 (W.D.N.Y.1990) (citing *Brower v. County of Inyo*, 489 U.S. 593, 109 S.Ct. 1378, 1381, 103 L.Ed.2d 628 (1989)). Plaintiff properly alleges governmental action by asserting "[t]hat at the time of the orders, Shuttle management and USAir management were working in concert with defendants McNeil, Blankenship and O'Donnell[.]" Compl. at ¶ 50. Plaintiff alleges that the means were intentionally applied by stating that defendants sought "to avoid publicity and place blame on Richard Merritt," (Compl. at ¶ 50) and that the confinement "was a means of preventing the [c]aptain from making proper entries in aircraft log books and records." *Id.* at ¶ 48.

However, plaintiff fails to allege that his freedom of movement was terminated—that he was seized. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). Plaintiff does not allege that he felt threatened by the presence of the individual federal defendants, that any of these defendants displayed a weapon, that anybody touched him or used language or tone suggesting that compliance with the investigation was necessary or that the individ-

---

**6.** Although defendants correctly contend that plaintiff may not sue the United States under the FTCA for violations of the Constitution, 28 U.S.C. § 2679(b)(2)(a), plaintiff may proceed against the individual federal defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau* *of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *Bivens*, the Supreme Court held that violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action for damages. *See also* section C(2), *infra*.

ual federal defendants retained his personal effects for a prolonged period. *United States v. Lee,* 916 F.2d 814, 819 (2d Cir.1990). There is no indication that plaintiff believed, or that a reasonable person would have believed, that he was not free to leave.

Accordingly, defendants' motion to dismiss the Fourth Amendment claim against them is granted and this Court need not address the issue of immunity in this context.

### 5. Due Process Claims [7]

Defendants move to dismiss plaintiff's Fifth Amendment due process claims, arguing that plaintiff received all the process that is due to him when he exhausted his administrative remedies and that they are entitled to qualified immunity. In opposition, plaintiff contends that: "Judge Fowler did not address the issues of: 1) a massive cover-up, 2) collusion among the present defendants, or 3) prejudice in the DOT. These issues must be deemed preserved for this Court." Pls.' Mem. at 10.

█ Plaintiff correctly contends that Administrative Judge Fowler did not consider the serious allegations of misconduct in the investigation against him. Because plaintiff was not allowed to demonstrate that the investigation of the near-crash was tainted at the NTSB review of the revocation of his license, this Court may decide whether the investigation comported with the requirements of due process.[8]

Moreover, the individual federal defendants are not shielded from liability by the doctrine of qualified immunity. In order to establish immunity from suit, the individual federal defendants must demonstrate either that the rights plaintiff claims to have been violated were not "clearly established" at the time of the investigation or that it was "ob-

jectively reasonable" for defendants to believe their acts did not violate the clearly established rights. *Ayeni v. Mottola,* 35 F.3d 680, 684 (2d Cir.1994).

█ Plaintiff appears to allege that he was terminated from employment because he refused to comply with an investigation that was contrary to federal air regulations. Compl. at ¶ 50. If the investigation indeed was contrary to federal air regulations then it was not reasonable for the individual federal defendants to agree to participate in it. Because of the gravamen of the allegations against them, the individual federal defendants must defend the alleged due process violations on the merits.

### 6. Conspiracy Claims

Defendants move to dismiss plaintiff's § 1985 conspiracy claims pursuant to Rule 12(b)(6), arguing that plaintiff has not pleaded the facts with sufficient particularity.

█ To state a conspiracy claim under § 1985, a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws ...; (3) [together with] an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087–88 (2d Cir.1993) (citing *United Bhd. Of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983)). Because plaintiff appears *pro se,* the Court construes the First Amended Complaint liberally. *Stambler v. Dillon,* 302 F.Supp. 1250, 1252 (S.D.N.Y.1969). However, even liberally construed, the First

---

**7.** Plaintiff's claim that the federal defendants violated his Fourteenth Amendment due process rights is dismissed because the individual federal defendants "were acting within the scope of their employment as employees of the federal government at the time of such incident." Certification of Scope of Employment at 2. Because the Fourteenth Amendment applies to state action and not federal action, plaintiff's due process claims against the federal defendants fall solely within the scope of the Fifth Amendment.

**8.** Although plaintiff may not proceed with his Fifth Amendment claim under the FTCA, plaintiff may proceed pursuant to *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). In *Davis,* the Supreme Court held that a cause of action and damages remedy may be implied directly under the Constitution when the Due Process Clause of the Fifth Amendment is violated. *Id.* at 248–49, 99 S.Ct. 2264.

Amended Complaint fails to allege the pivotal second requirement.

■ The fatal flaw is that plaintiff fails to allege, in any way, that the purpose of the conspiracy was to deprive plaintiff of equal protection or equal privileges and immunities. Rather, the First Amended Complaint alleges in relevant part:

That [the] FAA was under severe scrutiny by the Congress of the United States concerning errors, negligence and gross negligence involved with the Valujet crash in the Florida Everglades which occurred only days before flight 6500 made its take-off. In an effort to hide further negligence and gross negligence, defendants Hallcom, Wilson, McNeil, Blankenship, O'Donnell, Shuttle and USAir entered into a conspiracy to place blame on plaintiff, Richard Merritt[,] and to deprive him of constitutional rights and privileges causing damages to plaintiffs.

Compl. at ¶ 44.

In *Griffin v. Breckenridge,* Justice Stewart, writing for the majority, explained that

[t]he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

403 U.S. 88, 102, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971) (footnotes ommitted).

Here, the First Amended Complaint does not allege any racial or class-based motivation, nor does it allude to other discriminatory animus necessary to state a claim for conspiracy under 42 U.S.C. § 1985. Thus, plaintiff's claim must be dismissed.[9]

### 7. Sixth Amendment Claim [10]

■ Plaintiff argues that his Sixth Amendment right to "a speedy and public trial, by an impartial jury" was violated when his pilot's license was revoked. The Sixth Amendment guarantees this right "[i]n all criminal prosecutions." U.S. Const. amend. VI. Revocation of a pilot's license is neither criminal nor quasi-criminal in nature. *Roach v. National Transp. Safety Bd.,* 804 F.2d 1147, 1152–55 (10th Cir.1986). Thus, the Sixth Amendment claim must be dismissed.

### 8. Eighth Amendment Claim

■ Also, plaintiff contends that the federal defendants violated the Eighth Amendment's prohibitions against excessive bail, excessive fines, and cruel and unusual punishment. U.S. Const. amend. VIII. However, here, plaintiff never was required to post bail or pay a fine; nor does he allege that suspension of a license is "punishment" within the scope of the Eighth Amendment. *Browning–Ferris Indus. of Vt., Inc. v. Kelco Disposal Inc.,* 492 U.S. 257, 262, 109 S.Ct. 2909, 106 L.Ed.2d 219 (1989). Thus, plaintiff's Eighth Amendment claim is dismissed.

### C. Claims Against U.S. Airways

### 1. Collateral Estoppel and the Negligence Claim

■ "To invoke the doctrine of collateral estoppel, New York law requires (1) an identity of issues, which were necessarily decided in the prior action and are decisive to the present action and (2) a full and fair opportunity to contest the decision that is being asserted as controlling in the second action." *Wallace v. Roche,* 921 F.Supp. 946, 951 (E.D.N.Y.1996). The parties concede that the second requirement is met; plaintiff does not argue that the pilot's license was revoked without a full and fair hearing. However, defendant fails to demonstrate an identity of issues decided in the prior action. Indeed, this Court concludes that the ALJ did not necessarily decide the issue of causation when he suspended plaintiff's pilot license. As a result, plaintiff is not collaterally

---

9. For the foregoing reasons, U.S. Airways' and Shuttle's motions to dismiss plaintiff's 42 U.S.C. § 1985 claims also are granted.

10. The Sixth and Eighth Amendment claims against defendants U.S. Airways, Shuttle, Hallcom and Wilson are also dismissed for the reasons set forth herein.

estopped from litigating the issue of causation.

> [A] cause of action founded upon negligence, from which liability will follow requires more than conduct.
>
> . . . . .
>
> [It requires a] reasonably close causal connection between the conduct and the resulting injury.

Prosser and Keeton on the Law of Torts § 30, at 164–5 (5th ed.1984). Here, the ALJ found that plaintiff "violated Section 91.13(a), which states that no person may operate an aircraft in a careless manner, so as to endanger the life and property of another." *See* Dec. 13, 1996 Initial Decision and Order of the Honorable William E. Fowler Jr. of the NTSB at 1341, [hereinafter "NTSB Decision"]. However, he also found that "the failure of the ATC to ... pass ... information on to Captain Merritt can be, and will be.... construed as a mitigating circumstance." *Id.* at 1335. This circumstance persuaded the ALJ to modify the revocation of plaintiff's license to a nine-month suspension. This misfeasance may be construed to be an intervening cause between the conduct and the resulting injury.

The ALJ suggested that misfeasance on the part of the tower might have intervened between plaintiff's "carelessness" and the takeoff. Particularly, the ALJ stated, "had the crew been apprised of all of the late weather information, I would find virtually certain that the flight wouldn't have-wouldn't have come about." *Id.* at 1336. Because the ALJ did not necessarily explore the issue of causation when he reviewed the emergency revocation of plaintiff's license, plaintiff is not barred from litigating the issue of negligence by U.S. Airways.

## 2. Collateral Estoppel and the *Bivens* Claim

Next, U.S. Airways argues that plaintiff's *Bivens* claim is barred by collateral estoppel, contending that the *Bivens* claim "is nothing more than an attempt to circumvent the judicial review provisions of the Federal Aviation Act and to relitigate issues that are inter-twined with the issues raised in the NTSB proceeding." US Airways' Mem. at 14–15.

██ Because plaintiff would not have been able to argue that U.S. Airways conspired against him with the other defendants (including government agents) during the NTSB proceeding, it is irrelevant that plaintiff had opportunities to appeal the revocation of his pilot license pursuant to 49 U.S.C. § 46110(a). The NTSB hearing reviewed the revocation of plaintiff's license, it did not evaluate plaintiff's conspiracy claim, which was not "necessarily decided in the prior action." *Wallace*, 921 F.Supp. at 951. The individual federal defendants, U.S. Airways and Shuttle could not be sued for conspiracy at an appeal to the full NTSB. Therefore, plaintiff is not collaterally estopped from litigating his conspiracy claims in this Court.

## 3. Section 1983 Claims

██ US Airways moves to dismiss plaintiff's § 1983 conspiracy claims pursuant to Rule 12(b)(6) contending that plaintiff fails to allege conspiracy with sufficient specificity. Plaintiff alleges that, "[i]n an effort to hide further negligence and gross negligence, defendants Hallcom, Wilson, McNeil, Blankenship, O'Donnell, Shuttle, and USAir entered into a conspiracy to place blame on plaintiff, Richard Merritt[,] and to deprive him of constitutional rights and privileges causing damages to plaintiffs." Compl. at ¶ 44.

This Court concludes, however, that there is a more fundamental obstacle preventing plaintiff from proceeding under § 1983. The alleged conspiratorial acts presumably were undertaken pursuant to FAA regulations. Acts performed pursuant to FAA regulations are under color of federal law because the FAA is a federal agency. Section 1983 addresses acts of "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects ... [a] person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983 (1994).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured

by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

Because plaintiff fails to allege that U.S. Airways acted under color of state law, he may not proceed with a civil action for deprivation of rights pursuant to 42 U.S.C. § 1983.

## 4. Defamation Claim

US Airways moves to dismiss plaintiff's defamation claim arguing: (a) lack of specificity; (b) the defense of truth; and (c) collateral estoppel.

### a. Specificity of Allegation

■ To create liability for defamation there must be:

(a) a false and defamatory statement concerning another;

(b) an unprivileged publication to a third party;

(c) fault amounting at least to negligence on the part of the publisher; and

(d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Restatement (Second) of Torts § 558 (1977).

■ In the First Amended Complaint, plaintiff asserts that:

USAir management, Shuttle management and FAA personnel contacted the news media and gave false and misleading reports claiming that Richard Merritt intentionally made a takeoff in a thunderstorm and/or tornado and that the captain used poor judgment. This false information was promulgated in a malicious effort to injure plaintiff in his business trade and reputation.

Compl. at ¶ 56. Plaintiff properly alleges that a false or defamatory statement was published with fault greater than negligence. Plaintiff alleges actual harm in paragraph 64

of the First Amended Complaint by stating that "the false [and] malicious nature of the television campaign influenced public opinion against the plaintiff ... and caused damages."

■ Liberal pleading standards apply to defamation complaints. "[P]laintiff's charges must be set forth in the form of a short concise statement detailing only that which is necessary to enable the defendant to respond." *Reeves v. Continental Equities Corp. of America,* 767 F.Supp. 469, 473 (S.D.N.Y.1991) (citing *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980)). Thus, defendant's motion is denied.

### b. Collateral Estoppel

■ Plaintiff is not collaterally estopped from arguing that U.S. Airways' alleged defamatory statement is false.[11] The burden of establishing issue preclusion is placed upon the party claiming preclusion. Fed.R.Civ.P. 8(c). "[T]he moving party must show that there was no other rational ground upon which the final judgment was based than the issue which it seeks to preclude in the present litigation." *United States v. Nicolet, Inc.,* 712 F.Supp. 1193, 1200 (E.D.Pa.1989) (citing *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1518–19 (9th Cir.1985)).

■ There were other findings that led the ALJ to suspend plaintiff's license. One other possible ground for the decision was failure of the pilot in command "before beginning of flight, [to] familiarize himself of all available information concerning that flight." NTSB Decision at 1340–41. A second rational ground was failure to obtain the latest weather information before takeoff. *Id.* at 1338. Defendant failed to show that plaintiff's "poor judgment" was the only ground for the NTSB's decision.

Plaintiff is not collaterally estopped from arguing that U.S. Airways' allegedly defamatory statement was false. Because plaintiff alleged the elements of defamation, defendant's motion to dismiss the defamation claim is denied.

11. Defendant Shuttle also asserts that this claim should be dismissed because the truth of the alleged defamatory statements was established at

the NTSB hearing and for lack of specificity. Shuttle's motion to dismiss this claim on collateral estoppel grounds also is denied.

### 5. ERISA Claim

Defendant moves to dismiss plaintiff's ERISA claim on the ground that plaintiff failed to allege any acts of U.S. Airways that were intended to deny plaintiff benefits under Shuttle's pension and benefits plans. Defendant contends that "[p]laintiff does not allege that U.S. Airways participated in the decision to terminate him, that U.S. Airways provided him with pension benefits, or that U.S. Airways took away those pension benefits." Defs.' Mem. at 22. In essence, defendant appears to argue that it was not plaintiff's employer.

The components of a *prima facie* ERISA claim are: " '(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled.' " *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 922 (3d Cir.1990), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991) (quoting *Gavalik v. Continental Can Co.,* 812 F.2d 834, 852 (3rd Cir.), *cert. denied,* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987)).

Plaintiff properly alleges the first element in paragraph 96 of the First Amended Complaint by stating that plaintiff "was terminated from his employment at the Shuttle because of his age and entitlement to benefits." Plaintiff alleges the second element in paragraph 98 by contending that defendants USAir, Hallcom and Wilson "have conducted a carefully orchestrated plan to terminate and eliminate plaintiff in direct violation of rights under ERISA." Finally, plaintiff sufficiently establishes the third element, for purposes of this motion, in paragraph 95: "[t]hat prior to the unlawful termination of plaintiff, Richard Merritt, he was vested in certain pension, retirement and welfare benefits." Because the First Amended Complaint clearly sets forth the components of an ERISA claim,[12] defendant's motion to dismiss is denied.

### 6. ADEA Claim

Defendant moves to dismiss the ADEA claim, arguing that this Court lacks jurisdiction. In order to commence a civil action under the ADEA, an individual must file a charge alleging unlawful discrimination with the Equal Employment Opportunity Commission ("EEOC"). 29 U.S.C. § 626(d) (1985). Because plaintiff failed to file a charge with the EEOC, this Court lacks jurisdiction to hear his ADEA claim and, accordingly, this claim is dismissed.[13]

### 7. Loss of Consortium Claim

Defendant moves to dismiss plaintiff Mary–Jo Merritt's claim for loss of consortium, arguing that if all of plaintiff's claims against U.S. Airways are dismissed, his spouse's derivative claims necessarily also must be dismissed. However, because several of Mr. Merritt's claims against U.S. Airways survive this motion, Mrs. Merritt's loss of consortium claim survives this motion as well. *Gerzog v. London Fog Corp.,* 907 F.Supp. 590, 605 (E.D.N.Y.1995).[14]

### D. Claims against Shuttle, Hallcom and Wilson

### 1. Negligence Claims

Defendants Shuttle, Hallcom and Wilson move to dismiss plaintiff's claims for negligent failure to warn of inclement weather and of the aircraft's damaged left wing of aircraft pursuant to Rule 12(b)(1).

Defendants contend that this Court lacks subject matter jurisdiction under § 29(6) of New York's Workers' Compensation Law which provides:

---

12. Whether defendant U.S. Airways indeed in plaintiff's employer within the meaning of ERISA may yet have to be determined. Plaintiff's claim survives the motion to dismiss based on paragraph 7 of the First Amended Complaint which alleges, "[d]efendant U.S. Air, Inc.... operates aircraft and carries passengers for hire in and out of New York State on a daily basis, owns an interest in Shuttle, Inc., and maintains an agreement to manage and operate defendant Shuttle."

13. For the reasons set forth herein, the ADEA claim against Shuttle, likewise, is dismissed.

14. For the reasons set forth herein, Shuttle's motion to dismiss plaintiff, Mrs. Merritt's, loss of consortium claim is denied.

The right to compensation or benefits under this chapter, shall be the exclusive remedy to an employee ... when such employee is injured or killed by the negligence or wrong of another in the same employ.

N.Y. Work. Comp. § 29(6) (McKinney 1993). Although this statute prohibits an employee from asserting negligence claims against his employer, the injured worker, nevertheless, may bring a claim for injury arising out of intentional conduct. *Hirsch v. Mastroianni,* 80 A.D.2d 633, 436 N.Y.S.2d 87, 88 (1981).

■ Here, plaintiff is barred from asserting his negligence claims due to the exclusivity of his worker's compensation remedy. *Burlew v. America Mut. Ins. Co.,* 63 N.Y.2d 412, 416, 482 N.Y.S.2d 720, 472 N.E.2d 682 (1984). Plaintiff alleges multiple mental states. For instance, he complains that "as a direct result of the careless, reckless, negligent, grossly negligent and intentional conduct of the defendants that he suffered and continues to suffer severe mental and physical distress and damages." Compl. at ¶ 42.

■ Although plaintiff alleges conduct that may be found to be grossly negligent, or perhaps even reckless, he does not allege an intent to cause injury and, therefore, does not allege intentional conduct—the narrow exception which allows an injured employee to pursue a remedy outside the Workers' Compensation Law. *Finch v. Swingly,* 42 A.D.2d 1035, 348 N.Y.S.2d 266, 268 (1973). Allegations of gross negligence or reckless conduct by the employer are not sufficient to avoid the exclusivity provision of the Workers' Compensation Law. *Gagliardi v. Trapp,* 221 A.D.2d 315, 633 N.Y.S.2d 387–88 (1995). Accordingly, this Court lacks subject matter jurisdiction over the negligence claims and grants defendant's motion to dismiss this claim.[15]

### 2. *Bivens* Claims

Defendants Shuttle, Hallcom and Wilson move to dismiss the Fourth Amendment claims plaintiff brings pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Defendants also move to dismiss the Fifth Amendment due process claims plaintiff asserts pursuant to *Davis v. Passman,* 442 U.S. 228, 234, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979). Essentially. defendants argue that plaintiff fails to allege the element of federal action and, therefore, may not proceed against private parties.

■ The two principal elements a claimant must establish to support a *Bivens* action are: (1) deprivation of a right secured by the Constitution and laws of the United States; and (2) action by defendant under color of federal law in depriving plaintiff of that right. *Mahoney v. National Org. for Women,* 681 F.Supp. 129, 132 (D.Conn.1987) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155–6, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)).

■ In setting forth his Fourth and Fifth Amendment claims, plaintiff alleges that defendant Wilson, the director of flight operations and chief pilot for Shuttle,

ordered plaintiff ... back to Shuttle offices to be interrogated by FAA Inspector O'Donnell and others[,] ... [that o]rders given by defendant Wilson violated Federal Air Regulations[,] ... [t]hat at the time of the orders, Shuttle management and U.S. Air[ways] management were working in concert with defendants McNeil, Blankenship and O'Donnell to avoid publicity[, and ... that i]n furtherance of the conspiracy, defendant Wilson terminated plaintiff ... from employment [for refusal to cooperate with FAA authorities].

Compl. at ¶ 49–50. These allegations are insufficient to establish a claim for violation of the Fourth Amendment because plaintiff was not seized.[16]

---

**15.** Section 29 does not deprive this Court of subject matter jurisdiction over plaintiff's defamation claim against Shuttle, however, because intentional torts are not remedied by New York's Workers' Compensation Law. Likewise, plaintiff's defamation claim against Hallcom is not barred because § 29 does not prohibit actions against co-employees to recover damages for intentional torts. *Jackman v. Fisher,* 91 A.D.2d 602, 456 N.Y.S.2d 429, 430 (1982).

**16.** *See* section (B)(4), *infra.*

However, the allegations sufficiently state a claim for violation of the Fifth Amendment right to due process.

■ For purposes of ruling on a motion to dismiss, this Court must accept as true all material facts in the First Amended Complaint and must make all reasonable inferences in a light most favorable to the plaintiff. *Tenorio v. Murphy,* 866 F.Supp. 92, 95 (S.D.N.Y.1994). Federal action and due process violations may be inferred from plaintiff's allegations that the interrogation was contrary to FAA policy, that federal officials and private defendants conspired to avoid publicity and that plaintiff was terminated for refusing to comply with an unlawful investigation.

■ In order to satisfy the requirement of federal action when alleging constitutional violations by a private actor, "the plaintiff must show that the defendants' actions were commanded or encouraged by the federal government, or that the defendants were so intertwined with the government as to become painted with the color of state action." *Mahoney,* 681 F.Supp. at 132. Plaintiff alleges that both FAA and Shuttle employees knew that the left wing of the aircraft was damaged and failed to inform flight 6500. Compl. at ¶¶ 30–32.

Plaintiff alleges that the United States and Shuttle engaged in "unsafe practices" such as "inadequate training, staffing shortages, poor training, poor supervision [and] layoffs . . . ." Compl. at ¶ 35. Plaintiff also alleges that he was terminated by defendant Wilson, "before a proper investigation had been conducted . . . ." Compl. at ¶ 52. Read together, these allegations support a theory of federal action based on a joint endeavor by Shuttle employees and government agents.

Accordingly, defendant's motion to dismiss the Fourth Amendment claim brought pursuant to *Bivens* is granted and the motion to dismiss the Fifth Amendment claim brought pursuant to *Davis* is denied.

### 3. Railway Labor Act Claims

■ Defendant Shuttle moves to dismiss the claim that the grievance proceedings employed to review plaintiff's termination violated the due process provisions of the Railway Labor Act, 45 U.S.C. § 151 *et seq.* ("RLA"). Defendant argues that this Court lacks subject matter jurisdiction over minor disputes arising under the collective bargaining agreement ("CBA") between the parties and that plaintiff's only remedy is mandatory arbitration. Plaintiff maintains that the RLA "does not preclude employee[s] from bringing a state law cause of action on any labor dispute [and that a]t most, the provisions of the RLA require parties to try to settle certain issues arising out of the employment relationship." Pls.' Mem. at 30. This Court concludes that it lacks subject matter jurisdiction over plaintiff's claims that he was denied the process due to him under the RLA.

Both parties agree that the dispute between Shuttle and plaintiff is a minor dispute. Major disputes involve "the formation of collective [bargaining] agreements or efforts to secure them." *Consolidated Rail Corp. v. Railway Labor Executives Ass'n.,* 491 U.S. 299, 302, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989). Minor disputes involve "controversies over the meaning of an existing collective bargaining agreement in a particular fact situation[.]" *Trainmen v. Chicago River & Ind. R.R. Co.,* 353 U.S. 30, 33, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957). Because plaintiff's dispute over the grievance procedure is a "minor dispute," i.e., it involves the meaning of an agreement, it is subject to mandatory arbitration.

■ Indeed, plaintiff is barred from suing in federal court because he has filed grievances pursuant to §§ 29 and 30 of the CBA. "Upon his discharge, an employee has a choice—he may sue in court for a breach of contract of employment, or he can proceed under the agreement and the Railway Labor Act before the [National Railroad Adjustment] Board. He may not do both." *Rosen v. Eastern Air Lines, Inc.,* 400 F.2d 462, 464 (5th Cir.1968).

■ The National Railroad Adjustment Board ["Board"], not the federal courts, should decide questions of procedural arbitrability. *Larsen v. American Airlines, Inc.,* 313 F.2d 599, 603 (2d Cir.1963). Indeed, the Board is empowered to interpret whether

Shuttle comported with the due process requirements of the CBA because "arbitration regarding whether there is just cause to discharge an employee includes considerations of procedural due process even if there is no explicit due process provision in the contract." *In re Pan American Corp.*, 140 B.R. 336, 340 (S.D.N.Y.1992).

Plaintiff has the opportunity to allege procedural defects arising out of the hearings that resulted in his termination. Indeed, in their submissions to this Court, the parties indicated that a mutually agreed upon arbitrator has been selected and proceedings will commence. Because this Court lacks subject matter jurisdiction over due process violations arising out.of the grievance procedure established by the collective bargaining agreement that governs the relationship between the parties, defendant's motion on this issue is granted.

## CONCLUSION

For the reasons set forth herein:

1. Plaintiffs' claims against WUSA and its reporter, Jarrell, are DISMISSED for lack of personal jurisdiction.

2. Defendant, United States' motion to dismiss for lack of subject matter jurisdiction is DENIED.

3. Defendant, Shuttle's motion to dismiss for lack of subject matter jurisdiction is DENIED.

4. Defendant, United States' motion to dismiss the First Amendment claim is GRANTED.

5. Defendant, United States' motion to dismiss the Fourth Amendment claim is GRANTED.

6. Defendant, United States' motion to dismiss the Fifth Amendment claim is DENIED.

7. Defendant, United States' motion to dismiss the Fourteenth Amendment claim is GRANTED.

8. Defendant, U.S. Airways' motion to dismiss the Fourteenth Amendment claim is GRANTED.

9. Defendant, Shuttle's motion to dismiss the Fourteenth Amendment claim is granted.

10. Defendant, United States' motion to dismiss the 42 U.S.C. § 1985 claim is GRANTED.

11. Defendant, U.S. Airways' motion to dismiss the 42 U.S.C. § 1985 claim is GRANTED.

12. Defendant, Shuttle's motion to dismiss the 42 U.S.C. § 1985 claim is GRANTED.

13. Defendant, United States' motion to dismiss the Sixth Amendment claim is GRANTED.

14. Defendant, United States' motion to dismiss the Eighth Amendment claim is GRANTED.

15. Defendant, U.S. Airways' motion to dismiss the Sixth Amendment claim is GRANTED.

16. Defendant, U.S. Airways' motion to dismiss the Eighth Amendment claim is GRANTED.

17. Defendant, Shuttle's motion to dismiss the Sixth Amendment claim is GRANTED.

18. Defendant, Shuttle's motion to dismiss the Eighth Amendment claim is GRANTED.

19. Defendant, U.S. Airways' motion to dismiss the negligence claim is DENIED.

20. Defendant, U.S. Airways' motion to dismiss the Fifth Amendment claim is DENIED.

21. Defendant, U.S. Airways' motion to dismiss the 42 U.S.C. § 1983 claim is GRANTED.

22. Defendant, U.S. Airways' motion to dismiss the defamation claim is DENIED.

23. Defendant, Shuttle's motion to dismiss the defamation claim is DENIED.

24. Defendant, U.S. Airways' motion to dismiss the ERISA claim is DENIED.

25. Defendant, U.S. Airways' motion to dismiss the ADEA claim is GRANTED.

26. Defendant, Shuttle's motion to dismiss the ADEA claim is GRANTED.

27. Defendant, U.S. Airways' motion to dismiss the loss of consortium claim is DENIED.

28. Defendant, Shuttle's motion to dismiss the loss of consortium claim is DENIED.

29. Defendant, Shuttle's motion to dismiss the negligence claim is GRANTED.

30. Defendant, Shuttle's motion to dismiss the Fifth Amendment claim arising out of Shuttle's investigation is DENIED.

31. Defendant, Shuttle's motion to dismiss the Fourth Amendment claim is GRANTED.

32. Defendant, Shuttle's motion to dismiss the Railway Labor Act due process claims arising out of the grievance proceedings is GRANTED.

WUSA and its reporter Jarrell should submit a judgment on notice.

SO ORDERED.