Richard MERRITT and Mary–
Jo Merritt, Plaintiffs–
Appellees,

v.

SHUTTLE, INC., U.S. Airways Inc., Terry V. Hallcom, Kent Jarrell, WUSA Television, Steven K. Wilson, John Does, 1 through 50, in their individual capacities, the last fifty names being fictitious names for employees of Shuttle, Inc., U.S. Airways Inc. and Federal Aviation Administration, Defendants,

Joseph McNeil, John Blankenship, Kevin O'Donnell and United States of America, Defendants–Appellants.

Docket No. 98–6207.

United States Court of Appeals,
Second Circuit.

Argued May 13, 1999.

Decided July 20, 1999.

Peter R. Maier, Department of Justice, Washington, D.C. (Frank W. Hunger, Assistant Attorney General, Washington, D.C., Zachary W. Carter, United States Attorney, Eastern District of New York, Brooklyn, NY, Barbara L. Herwig, Department of Justice, Washington, D.C., of counsel), for Appellants McNeil, Blankenship and O'Donnell.

Richard J. Merritt, Lido Beach, NY, Appellee Pro Se.

Before: MESKILL, PARKER and SOTOMAYOR, Circuit Judges.

MESKILL, Circuit Judge:

Defendants-appellants, employees of the Federal Aviation Administration, appeal from an order entered in the United States District Court for the Eastern District of New York, Platt, J., denying their motion to dismiss plaintiffs' *Bivens* claims on the basis of qualified immunity. We remand with instructions to dismiss the *Bivens* claims for lack of subject matter jurisdiction.

## BACKGROUND

When we review the denial of a motion to dismiss we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). According to his complaint, plaintiff-appellee Richard Merritt is a commercial airline pilot who was formerly employed by defendant Shuttle, Inc., d/b/a USAir Shuttle (Shuttle). Defendant U.S. Airways owns a stake in Shuttle and manages its operations, which consist mainly of running commercial flights between airports in Washington, D.C., New York and Boston. Defendants-appellants Joseph McNeil, John Blankenship and Kevin O'Donnell are officials of defendant Federal Aviation

Administration (FAA). This lawsuit arises out of an incident that occurred while Merritt was piloting a Shuttle aircraft on June 24, 1996.

### I. *The June 24, 1996 Incident*

On the afternoon of June 24, 1996, Merritt was employed by Shuttle as captain of a Boeing 727 assigned to fly from Washington National Airport in Washington, D.C. to LaGuardia Airport in New York City. Between 4:30 p.m. and 5:00 p.m., as Merritt prepared the aircraft for takeoff, a band of severe weather, including a tornado, rapidly approached the airport. Although other employees of Shuttle and the FAA received repeated warnings about the approaching weather system, they failed to communicate that information to Merritt's crew. At 5:11 p.m., FAA officials prepared to evacuate their control tower to avoid the impending tornado but nevertheless cleared Merritt's plane for takeoff.

Unaware of the severity of the approaching storm, Merritt proceeded to take off. As the plane was lifting off the runway, however, the severe weather crossed its flight path. The plane experienced a severe weather phenomenon known as "windshear," which buffeted the plane violently and caused the left wingtip to strike the runway as the plane became airborne. Although officials from Shuttle and the FAA were aware that the plane's wingtip had been damaged on takeoff, they failed to so inform the flight crew, who proceeded on route and landed safely in New York.

Once the plane landed, Shuttle officials detained Merritt for six hours, a period during which Shuttle employees allegedly altered the aircraft's logbooks in an attempt to blame the takeoff incident on Merritt. The next day, Merritt refused Shuttle's demand that he submit to FAA interrogation, as he believed that the order violated federal air regulations. Shuttle fired Merritt on July 3, 1996, citing his general failure to follow Shuttle's instructions, and in particular his refusal to coop-

erate with federal investigators despite repeated requests from Shuttle and FAA officials that he do so. The FAA thereafter revoked Merritt's pilot certificate in an emergency order dated November 1, 1996.

### II. *Administrative Proceedings*

Merritt challenged the emergency revocation order in a hearing before an administrative law judge (ALJ) of the National Transportation Safety Board (NTSB). The FAA defended its actions on the ground that Merritt had been careless and had exercised poor judgment in deciding to take off in the violent weather. The FAA presented evidence that the severity of the approaching storm was apparent and that Merritt's decision to take off was irresponsible.

Merritt, in contrast, blamed the incident on officials of Shuttle, U.S. Airways and the FAA, asserting their negligence in failing to provide him with adequate information about the danger of the approaching storm. Merritt also argued that Shuttle, U.S. Airways and the FAA immediately and without investigation, conspired to hold Merritt responsible for the incident, in an attempt to "cover up" their own culpability.

At the end of the four day hearing, the ALJ found enough blame to go around. For one, he noted that Merritt, as captain of the flight, bore ultimate responsibility for the decision to take off, and had exercised poor judgment and acted carelessly in making that decision. The ALJ concluded that Merritt had violated federal air safety regulations and that administrative action was warranted.

The ALJ also found, however, that employees of the FAA, U.S. Airways and Shuttle failed to communicate the latest weather information to Merritt, and that their failure constituted a "mitigating circumstance" that lessened Merritt's culpability. Indeed, the ALJ noted his belief that had the crew "been apprised of all the latest weather information, I would find

virtually certain that the flight ... wouldn't have come about."

In light of Merritt's prior, unblemished record, the ALJ modified the FAA emergency order by vacating the "supreme sanction" of revocation and imposing a nine month suspension in its place.

### III. *Merritt's Federal Suit*

Merritt initially appealed the ALJ's order to the NTSB, which has authority to "amend, modify, or reverse" orders of the Administrator. *See* 49 U.S.C. § 44709(d). Merritt quickly abandoned that appeal, however, and filed this lawsuit in the district court, naming Shuttle, U.S. Airways, the FAA, and the three FAA officials who investigated the June 24 incident.[1] In essence, the complaint laid blame for the incident at the defendants' door. It also alleged that the defendants failed to conduct a meaningful investigation and instead conspired to conceal their own negligence by blaming the incident on Merritt. Merritt advanced a host of common law, statutory and constitutional claims based on these allegations.

The defendants moved to dismiss on various grounds. In a lengthy written opinion, the district court granted a number of these motions and denied the balance. *See Merritt v. Shuttle*, 13 F.Supp.2d 371 (E.D.N.Y.1998). The only ruling now on appeal concerns Merritt's claim, under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that the individual federal defendants' conduct in investigating the incident deprived Merritt of his Fifth Amendment due process rights.

The defendants-appellants moved to dismiss the *Bivens* claim on qualified immunity grounds, but the district court denied

their motion as a matter of law. In denying that motion, the district court noted that to establish immunity from suit, the FAA officials must demonstrate that the right that plaintiff claims was violated was not "clearly established" at the time of the investigation, or, if the right was clearly established, that it was "objectively reasonable" for the defendants to believe that their actions did not violate that right. 13 F.Supp.2d at 382. Without conclusively determining what right Merritt claimed was violated, the district court noted that "[p]laintiff appears to allege that he was terminated from employment because he refused to comply with an investigation that was contrary to federal air regulations." *Id.* The district court did not specify what constitutional right Merritt had in continued employment with Shuttle or in the FAA's compliance with federal regulations. Neither did it examine whether any such rights were clearly established at the time of the investigation. The district court did conclude, however, that the individual federal defendants were not entitled to qualified immunity because "[i]f the investigation indeed was contrary to federal air regulations then it was not reasonable for the individual federal defendants to agree to participate in it."[2] *Id.*

The individual federal defendants now appeal, arguing that they are entitled to qualified immunity on two alternative bases. First, they argue that (1) because the district court lacked subject matter jurisdiction over Merritt's *Bivens* claims it follows that (2) he has no federal cause of action and therefore (3) they may not be said to have violated any of Merritt's "clearly established rights." They also argue, in the alternative, that even if the court had jurisdiction, Merritt at most alleged a violation of agency regulations, and failed to allege that they violated any of his constitutional rights. As explained more

---

1. Merritt also sued a Washington, D.C. television station and one of its reporters based on their reports of the incident. The district court dismissed those claims for lack of personal jurisdiction. *See Merritt v. Shuttle, Inc.*, 13 F.Supp.2d 371, 378 (E.D.N.Y.1998).

2. Because we dispose of this appeal on threshold jurisdictional grounds, we do not reach the district court's analysis of the nature of Merritt's *Bivens* claims, nor whether the individual federal defendants are entitled to qualified immunity from those claims.

fully below, we may review this interlocutory order now because it qualifies as a reviewable "collateral order" under the doctrine of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). *See Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

· Also relevant here, the federal defendants and Shuttle challenged the district court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). They characterized Merritt's action as a challenge to the FAA suspension order and noted that the Federal Aviation Act, 49 U.S.C. § 46110 (the "Aviation Act" or "Act"), locates judicial review of such orders exclusively in the courts of appeals. *See Merritt,* 13 F.Supp.2d at 379 & nn. 4–5. The district court denied the motion, holding that even if judicial review of FAA orders was limited to the courts of appeals, Merritt's complaint sought more than mere review of the FAA order and in fact alleged separate constitutional violations sufficient to support a stand-alone suit. *See id.* As to the *Bivens* claims based on investigative improprieties, the district court reasoned that jurisdiction in the district court was proper because "plaintiff was not allowed" during the administrative review of his revocation, "to demonstrate that the investigation of the near-crash was tainted." *Id.* at 382. No one has appealed from the subject matter jurisdiction portion of the district court's order. The individual defendants' appeal from the order denying their claim of qualified immunity with respect to Merritt's Fifth Amendment *Bivens* claims is the sole issue on appeal. No other parties are before us and no other issues have been raised.

## DISCUSSION

I. *The Scope of This Appeal*

■ As a general rule, we only hear appeals from "final decisions of the district courts." 28 U.S.C. § 1291. An exception to this rule is the "collateral order" doctrine enunciated in *Cohen,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528. *Cohen* explained that interlocutory appeals may be taken from "claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id.* at 546. *Cohen* permits immediate appeal from interlocutory orders that "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

■ Here, the defendants-appellants seek review of the district court's order denying their motion to dismiss the complaint as to them on qualified immunity grounds. Generally speaking, an order denying a motion to dismiss is interlocutory and hence nonappealable. *See Hathaway v. Coughlin,* 37 F.3d 63, 67 (2d Cir. 1994). Immediate appeal will lie, however, where such an order denies a claim of qualified immunity as a matter of law. *Id.* (citing *Mitchell,* 472 U.S. at 530, 105 S.Ct. 2806). This is so because qualified immunity, if it applies, is a shield from litigation in the first instance, not merely a defense to liability. *See Kaminsky v. Rosenblum,* 929 F.2d 922, 926 (2d Cir.1991). Because that shield is effectively destroyed if a case is erroneously ordered to trial, *Cohen* permits immediate appeal when a district court denies an immunity defense as a matter of law.[3] *See Mitchell,* 472 U.S. at 530, 105 S.Ct. 2806; *Golino v. City of New*

---

**3.** To be appealable immediately, the qualified immunity denial must present "a legal issue that can be decided with reference only to undisputed facts and in isolation from the remaining issues of the case." *Mitchell,* 472 U.S. at 530 n. 10, 105 S.Ct. 2806. Where adjudication of the immunity defense requires the district court to determine "the existence,

*Haven,* 950 F.2d 864, 868 (2d Cir.1991). We therefore have jurisdiction to review the district court's order denying qualified immunity because the issue here may be decided as a matter of law.

■ We may not reach the substance of that order, however, without first carrying out our "special obligation to satisfy [ourselves] not only of [our] own jurisdiction, but also that of the lower courts in [the] cause under review." *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (citations and internal quotation marks omitted). This is because " '[o]n every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.' " *Steel Co.,* 523 U.S. at 94, 118 S.Ct. 1003 (quoting *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900)).

Appellate jurisdiction is proper because, as noted above, we have jurisdiction of the *Cohen*-based appeal from the denial of qualified immunity. Our review of the record, however, raises concerns about the district court's subject matter jurisdiction over the *Bivens* claim in the first instance. A defect in original jurisdiction would be dispositive here because, if the district court lacked jurisdiction, we would have " 'jurisdiction on appeal, not of the merits but merely for the purpose of correcting the error of the lower court in entertaining the suit.' " *Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986) (quoting *United States v. Corrick,* 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263 (1936)); *see also* Fed.R.Civ.P. 12(h)(3) ("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."). Accordingly, we must examine whether the district court had subject matter jurisdiction over the claim

now on appeal. In making that examination, we heed the Supreme Court's admonition that we must "police" "[s]ubject-matter delineations ... on [our] own initiative." *Ruhrgas A.G. v. Marathon Oil Co.,* — U.S. ——, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999).

We pause only to explain that in examining this issue we do not run afoul of the boundaries of our appellate jurisdiction articulated in *Swint v. Chambers County Comm'n,* 514 U.S. 35, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). *Swint* announced the general rule that when a federal appellate court reviews an order that is entitled to interlocutory review, the court may not at that time also review unrelated questions that are not themselves independently entitled to expedited consideration. *See id.* at 51, 115 S.Ct. 1203. Because non-immunity based motions to dismiss for want of subject matter jurisdiction are not ordinarily entitled to interlocutory review, *see Catlin v. United States,* 324 U.S. 229, 236, 65 S.Ct. 631, 89 L.Ed. 911 (1945), there is no independent basis for appellate jurisdiction over the district court's order denying the defendants' motion to dismiss for lack of subject matter jurisdiction. Indeed, perhaps aware of that limitation, none of the defendants appealed from that order. We nonetheless reach the subject matter jurisdiction issue of our own accord, however, and believe that in doing so we stay within the boundaries established in *Swint.*

In particular, we note that the *Swint* restrictions are not absolute. To the contrary, the *Swint* Court suggested and we have recognized that during the course of a properly grounded interlocutory appeal we may simultaneously consider another issue not itself entitled to interlocutory review if the otherwise unappealable issue is " 'inextricably intertwined' with" the appealable one, or if review of the otherwise unappealable issue is " 'necessary to ensure meaningful review of' " the appealable

---

or nonexistence, of a triable issue of fact," however, the denial of qualified immunity is not sufficiently "separate from the merits" so

as to be appealable under *Cohen. Johnson v. Jones,* 515 U.S. 304, 316–18, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995).

one. *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 758 (2d Cir.1998) (quoting *Swint*, 514 U.S. at 51, 115 S.Ct. 1203), *cert. denied*, —— U.S. ——, 119 S.Ct. 2337, 144 L.Ed.2d 235 (1999).

We believe that our examination of the basis for the district court's subject matter jurisdiction over the *Bivens* claim is "necessary to ensure meaningful review of" the district court's order denying qualified immunity on that claim. The existence of subject matter jurisdiction goes to the very power of the district court to issue the rulings now under consideration. *See United States Catholic Conference v. Abortion Rights Mobilization*, 487 U.S. 72, 77, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) (noting that "[t]he challenge in this case goes to the subject-matter jurisdiction of the court and hence its power to issue the order" under consideration). Indeed, as the Supreme Court recently reminded; "[f]or a court to pronounce upon [the merits] when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co.*, 523 U.S. at 101–02, 118 S.Ct. 1003. Accordingly, our review of the district court's order on the *Bivens* claim would be meaningless if the district court was without jurisdiction over that claim in the first instance.

In reaching the subject matter jurisdiction issue in the context of a limited interlocutory appeal, we do not break new ground. In the past we have undertaken such review during appeals brought under 28 U.S.C. § 1292(a), which permits immediate appeal from the grant or denial of injunctive relief. *See San Filippo v. United Brotherhood of Carpenters and Joiners*, 525 F.2d 508, 513 (2d Cir.1975) ("Where ... there is an appeal otherwise properly before this Court, and the absence of subject matter jurisdiction is suggested, that issue may be reviewed."); *see also Volges v. Resolution Trust Corp.*, 32 F.3d 50, 51 (2d Cir.1994) (reviewing jurisdiction of lower court in context of appeal from grant of injunctive relief). The Supreme Court has

sanctioned a similar practice. *See Deckert v. Independence Shares Corp.*, 311 U.S. 282, 287, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (noting, on properly grounded appeal from grant of preliminary injunction, that court of appeals' powers were "not limited to mere consideration of, and action upon, the order appealed from" because, " '[i]f insuperable objection to maintaining the bill clearly appears, it may be dismissed and the litigation terminated' " (quoting *Meccano, Ltd. v. Wanamaker*, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822 (1920))) (cited with approval in *Swint*, 514 U.S. at 50, 115 S.Ct. 1203).

The same practice should be followed in the collateral order context, and we believe that such a practice falls comfortably within the parameters contemplated by *Swint*. *See* Kanji, *The Proper Scope of Pendent Appellate Jurisdiction in the Collateral Order Context*, 100 Yale L.J. 511, 527 (1990) (arguing that it "appear[s] appropriate—indeed, essential—for collateral order courts, like their section 1292(a) counterparts, to consider all factors material to a determination of whether a collateral order was properly decided") (commentary cited with approval in *Swint*, 514 U.S. at 51, 115 S.Ct. 1203).

We emphasize, however, that we examine only whether the district court possessed jurisdiction over the precise claims that are the basis for this appeal, *i.e.*, Merritt's *Bivens* claims that the defendants-appellants' participation in a tainted investigation violated his Fifth Amendment due process rights. As we do not now have appellate jurisdiction over any other claims, we do not express an opinion on the merits of, or the district court's subject matter jurisdiction over, any other claims against these or any other defendants.

II. *Did the District Court Have Subject Matter Jurisdiction Over Merritt's Fifth Amendment* Bivens *Claims?*

■ Having explained how we reach the subject matter jurisdiction question, we

now endeavor to answer it. We conclude that the district court lacked jurisdiction over the *Bivens* claims now on appeal.

The Aviation Act provides that the courts of appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside" orders of the NTSB or the FAA. 49 U.S.C. § 46110(c).[4] The appellants contended below, and we now conclude, that section 46110 deprives the district court of jurisdiction over Merritt's *Bivens* claims against the defendants-appellants.

Other courts of appeals have addressed this precise question on very similar facts. *See Tur v. Federal Aviation Administration*, 104 F.3d 290 (9th Cir.1997); *Green v. Brantley*, 981 F.2d 514 (11th Cir.1993). In *Green*, after the FAA revoked his Designated Pilot Examiner certificate, Green eschewed administrative review entirely and instead filed a *Bivens* action in district court claiming that FAA officials had deprived him of his constitutionally protected liberty and property interests. *See* 981 F.2d at 517–18. The district court denied the defendants' motion for summary judgment on qualified immunity grounds and the defendants appealed. *See id.* The court of appeals *sua sponte* examined the district court's subject matter jurisdiction and remanded with instructions to dismiss the complaint. *See id.* at 521.

The Eleventh Circuit reasoned that Green's *Bivens* claim was an improper attempt to circumvent the Act's[5] exclusive judicial review provisions. *See id.* It concluded that adjudication of the merits of Green's *Bivens* claim—which challenged

the procedures and reasons behind the agency action that aggrieved him—would raise issues that were "inescapably intertwined" with a review of the procedures and merits surrounding the FAA's order. *See id.* As a result, the court concluded, the Act's exclusive judicial review procedures operated to deprive the district court of subject matter jurisdiction over the *Bivens* claim. *See id.*

A similar result obtained in *Tur*, 104 F.3d 290. There, the FAA revoked Tur's airman certificate on an emergency basis after Tur, a helicopter pilot, allegedly violated five separate FAA regulations. *Id.* at 291. An ALJ upheld the revocation order and both the NTSB and the Ninth Circuit affirmed. *See id.* When Tur later discovered that FAA officials had knowingly used false testimony in the course of the revocation proceedings, he sued those officials for money damages in federal district court, claiming that their knowing use of false testimony deprived him of his property interest in his airman's certificate without due process of law. *See id.*

The district court dismissed Tur's suit for want of subject matter jurisdiction and the Ninth Circuit affirmed. Applying the standard enunciated in *Green, supra,* the court of appeals concluded that Tur's claims were "inescapably intertwined with the merits of the previous revocation order." *Tur*, 104 F.3d at 292. In particular, the court reasoned that Tur's federal suit, which contested the manner in which FAA officials had conducted his investigation

---

**4.** 49 U.S.C. § 46110(a), which establishes the right to appeal, provides:

    [A] person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Federal Aviation Administration with respect to aviation safety duties and powers designated to be carried out by the Administrator) under this part may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides

or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

49 U.S.C. § 46110(a).

**5.** When *Green* was decided, the relevant judicial review provisions of the Act were located at 49 U.S.C.App. § 1486. In 1994, those provisions were renumbered and now appear at 49 U.S.C. § 46110. For convenience, we refer only to the current numbering scheme.

and revocation proceeding, would "result in new adjudication over the evidence and testimony adduced in the [prior revocation] hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ." *Id.* Because the Act's judicial review provisions located jurisdiction over those issues exclusively in the court of appeals, the court concluded that the district court properly dismissed the suit for want of subject matter jurisdiction. *See id.*

■ We believe that the persuasive reasoning of these cases suggests an identical result in Merritt's case. As in both *Green* and *Tur*, the substance of Merritt's Fifth Amendment due process claim is "inescapably intertwined" with review of the revocation order. Although Merritt styles this claim in constitutional terms, he ultimately challenges the manner in which the officials conducted themselves during and after the June 24 incident, and disputes the ALJ's factual conclusion that he bore responsibility for an ill-considered decision to take off. As in *Tur*, advancing such a claim in district court would "result in new adjudication over the evidence and testimony adduced in the [prior revocation] hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ" during the course of the proceedings under section 46110. *See Tur*, 104 F.3d at 292. The exclusive statutory scheme forbids such a result.[6] *See id.*

We note that the district court distinguished *Green* on the ground that Green chose not to seek administrative review at all, while Merritt did have a hearing before the ALJ. Although Merritt did, in fact, seek review of his revocation order before the ALJ, and indeed had the revocation modified to a suspension, he nevertheless failed to complete the judicial review process by either perfecting an appeal to the NTSB or filing a petition for review in the appropriate court of appeals. Moreover, that an individual aggrieved by agency action avails himself of the specified administrative review procedures does not alter the exclusivity of those procedures. Indeed, in *Tur* the plaintiff had exhausted his administrative remedies, and the FAA revocation order was affirmed by an ALJ, the NTSB and the Ninth Circuit Court of Appeals. The fact remained, however, that section 46110 rendered the district court *Bivens* action an improper collateral attack on the FAA order. *See Tur*, 104 F.3d at 292. The same may be said of Merritt's claim, whether or not he is deemed to have availed himself of the section 46110 procedures.

We need not decide whether a broad-based, facial constitutional attack on an FAA policy or procedure—in contrast to a complaint about the agency's particular actions in a specific case—might constitute appropriate subject matter for a stand-alone federal suit. *Cf. Foster v. Skinner*, 70 F.3d 1084, 1088 (9th Cir.1995) (holding that although courts of appeals have exclusive jurisdiction over claims that are "inescapably intertwined" with the FAA's actions on a particular final order, "a district court has subject matter jurisdiction over broad constitutional challenges to FAA practices"); *Mace v. Skinner*, 34 F.3d 854, 859–60 (9th Cir.1994) (holding that district court had jurisdiction over suit waging a "broad challenge to allegedly unconstitutional FAA practices"). *But see Gaunce v. deVincentis*, 708 F.2d 1290, 1293 (7th Cir. 1983) (per curiam) (suggesting that Act bars any constitutional challenge not preceded by exhaustion of Act's judicial review procedures). *See generally Reno v.*

---

6. Nor may we now take jurisdiction of Merritt's case under 49 U.S.C. § 46110(a), which vests us with jurisdiction over appeals from orders of the Administrator or the NTSB. To proceed under that section an individual must file a petition in the appropriate court of appeals within sixty days of the conclusion of the administrative process, unless the petitioner provides reasonable grounds for his failure to do so. That time period has run without explanation. More fundamentally, no "petition for review" from an administrative order has been filed in this court.

272

*Catholic Social Servs.*, 509 U.S. 43, 56, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (holding that statutory provision governing review of single agency actions does not apply to challenge to " 'a practice or procedure employed in making decisions' " generally) (quoting *McNary v. Haitian Refugee Center*, 498 U.S. 479, 491–92 & n. 12, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991) (holding that statutory review provisions of Immigration and Naturalization Act, which prescribed exhaustion of administrative remedies before judicial review in courts of appeals, precluded review of specific agency actions in individual cases, but did not preclude district court jurisdiction over "general collateral challenges to unconstitutional practices and policies")). Merritt's Fifth Amendment due process claim does not mount a broad-based attack on the FAA's practices or policies. He complains only of the circumstances that gave rise to his suspension and to the motivations and actions of those who allegedly engineered that suspension. In this regard, his Fifth Amendment due process claim is of the type that *Mace* specifically distinguished as properly preempted by section 46110, *i.e.,* one in which it is "the *conduct* of FAA officials in adjudicating a specific individual claim that [is] under attack." *Mace*, 34 F.3d at 858. Because Merritt's Fifth Amendment due process claim against the individual federal defendants is "directed at the merits of a previous adjudication," *see Tur*, 104 F.3d at 292, rather than at any FAA policies or procedures generally, Merritt could not avail himself of the rule articulated in *Mace* even if it were the settled law of this Circuit.

## CONCLUSION

The case is remanded with instructions to dismiss Merritt's Fifth Amendment due process claims against the defendants-appellants for lack of subject matter jurisdiction, and for other proceedings not inconsistent with this opinion.