Richard MERRITT & Mary Jo Merritt, Plaintiffs–Appellants,

v.

SHUTTLE, INC., U.S. Airways Inc., Terry V. Hallcom, Steven K. Wilson, & United States of America, Defendants–Appellees.

No. 00–6193.

United States Court of Appeals, Second Circuit.

Argued Jan. 8, 2001.

Decided April 3, 2001.

Richard Merritt, Lindenhurst, NY, pro se, for Plaintiffs–Appellants.

Peter R. Maier, Department of Justice, Washington, DC (David W. Ogden, Assistant Attorney General, Washington, DC, Loretta E. Lynch, United States Attorney, Eastern District of New York, Brooklyn, NY, and Barbara L. Herwig, Department of Justice, Washington, DC, of counsel), for Defendant–Appellee United States of America.

Before VAN GRAAFEILAND, WINTER, and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

Plaintiffs-appellants Richard Merritt ("Merritt") and Mary–Jo Merritt (collectively, "plaintiffs") appeal from a May 2, 2000 judgment of the United States District Court for the Eastern District of New York (Thomas C. Platt, Jr., *Judge* ) dismissing their action as against all defendants. More specifically, plaintiffs appeal the district court's *sua sponte* dismissal of their claim under the Federal Tort Claims Act (FTCA), 28 U.S.C. § 2671 *et seq.* (1994), against defendant United States of America (the "United States") for lack of subject matter jurisdiction.

The district court predicated its dismissal of plaintiffs' FTCA claim on 49 U.S.C.

§ 46110 (1994), which vests judicial review of certain administrative orders of the Federal Aviation Administration ("FAA"), the National Transportation Safety Board ("NTSB"), and the Department of Transportation ("DOT") exclusively in the courts of appeals. By order dated December 13, 1996, an administrative law judge ("ALJ") of the NTSB suspended Merritt's pilot's certificate for nine months. Instead of appealing that order to the full NTSB and then to this Court, Merritt filed this action in the United States district court for the Eastern District of New York. Finding that consideration of plaintiffs' FTCA claim was "inescapably intertwined" with review of the NTSB's nine-month suspension order, the district court *sua sponte* dismissed the claim for lack of subject matter jurisdiction.

For the reasons discussed, we conclude that Section 46110 does not preclude the district court from hearing Merritt's FTCA claim, and we therefore reverse the district court's dismissal of the claim and remand for further proceedings consistent with this opinion.

## BACKGROUND

Because we recited the allegations of Merritt's first amended complaint in some detail in our previous opinion, *Merritt v. Shuttle, Inc.,* 187 F.3d 263 (2d Cir.1999) ("*Merritt I* "), the following account is limited to those allegations that bear upon the issues that are the subject of the present appeal.

On June 24, 1996, Merritt was employed as a captain by defendant Shuttle, Inc. ("Shuttle") and assigned to captain flight number 6500 from Washington National Airport, Washington D.C. to LaGuardia Airport, New York City. At approximately 4:15 P.M., employees of the FAA ordered Merritt to proceed immediately to his aircraft for an early departure. Between 4:30 P.M. and 5:00 P.M., as Merritt prepared the aircraft for takeoff, a band of severe weather, including a tornado, rapidly approached the airport. Although FAA employees had been notified of the approaching storm, they failed to communicate that information to flight 6500. At approximately 5:11 p.m., as FAA officials prepared to evacuate their control tower to avoid the approaching tornado, they nevertheless cleared Merritt's plane for takeoff. Unaware of the severity of the approaching storm, Merritt proceeded to take off. As the plane was lifting off the runway, however, the severe weather crossed its flight path, causing a sudden loss of airspeed. The plane experienced a weather phenomenon known as "windshear," which violently buffeted the plane and caused the left wingtip to strike the runway as the plane became airborne. Although FAA employees were promptly informed of the damage to the plane, they failed to convey this information to flight 6500. Merritt continued the flight and landed the plane safely at LaGuardia Airport.

In the course of these events, Merritt claims that he suffered a near death experience, post traumatic stress syndrome, and other mental and physical ailments that rendered him disabled for an extended period of time. In his appellate brief, Merritt adds that "[t]he FAA suspended [his] airman's medical certificate because of personal injuries he sustained on June 24, 1996." Similarly, at oral argument, Merritt alleged that "the FAA revoked [his] medical certificate for a two year period because of the medically documented damages that were involved with [the takeoff incident]."

The day after the takeoff incident, June 25, 1996, Merritt refused Shuttle's demand that he submit to FAA interrogation, as he believed that the demand violated federal aviation regulations. As a result of this

refusal, Shuttle terminated Merritt's employment on July 3, 1996. The FAA thereafter revoked Merritt's airline transport pilot's certificate in an emergency order dated November 1, 1996. *See FAA v. Sachon*, No. SE 14698/SE 14700, 1996 WL 861978, at *1 (N.T.S.B. Dec. 13, 1996).

Merritt challenged the emergency revocation order in a hearing before an ALJ of the NTSB.[1] *Id.* During the four day hearing in December 1996, the parties called a total of 31 witnesses and introduced 63 exhibits. *Id.* at *2. Merritt testified that, at the time he commenced takeoff, the visibility was very good, with just a few clouds in the sky. *Id.* at *2, *4. Some of the passengers testified, however, that they saw rain and lightning just prior to takeoff. *Id.* The ALJ found that Merritt, as captain of the flight, bore ultimate responsibility for the decision to take off, had exercised poor judgment and acted carelessly in making that decision,[2] and had violated federal air safety regulations in the process.[3] *Id.* at *2–*3. The ALJ also found, however, that employees of the FAA failed to communicate the latest weather information to Merritt,[4] and that this failure constituted a "mitigating circumstance" that lessened Merritt's culpability. *Id.* at *3.[5] In light of this mitigating circumstance and Merritt's prior exemplary and unblemished record, the ALJ modified the FAA emergency order by vacating the "supreme sanction" of revocation of Merritt's pilot's certificate and imposing a nine-month suspension in its place. *Id.* at *4, *6.

Although Merritt initially appealed the ALJ's order to the NTSB,[6] he soon thereafter abandoned that appeal and filed this action on May 27, 1997. Among numerous federal and state claims against several defendants, the amended complaint included a Fifth Amendment due process *Bivens* claim against three FAA officials, *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), and an FTCA negligence claim against the United States based on the FAA's failure to warn him of the approaching storm. The defendants moved to dismiss on various grounds. The district court granted a number of these motions and denied the balance. *Merritt v. Shuttle, Inc.*, 13 F.Supp.2d 371 (E.D.N.Y.1998). Among the motions denied was the United States'

---

1. The hearing also concerned the revocation of the pilot's certificate of flight 6500's first officer, Peter Sachon.

2. The ALJ found that Merritt (i) "should not have taken off," 1996 WL 861978, at *2, (ii) did not "do everything that he could have to obtain all of the latest weather information before he executed the flight pursuant to the clearance given to him," *id.* at *3, (iii) exercised "poor judgment" by failing to switch on the aircraft's radar while taxiing on the runway, *id.*, and (iv) failed to exercise "the highest degree of care, responsibility, and prudent judgment of an ATP-rated pilot," *id.*

3. In concluding that Merritt "operated the aircraft in a careless manner, so as to endanger the life and property of another," 1996 WL 861978, at *5, the ALJ evidently concluded that Merritt violated 14 C.F.R. § 91.13(a),

which provides in relevant part: "No person may operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."

4. The ALJ found that FAA employees did not "afford [Merritt] all of the information they should have prior to him leaving National Airport." 1996 WL 861978, at *3.

5. The ALJ also stated that, "had the crew been apprised of all of the latest weather information, I would find virtually certain that the flight wouldn't have ... come about." 1996 WL 861978, at *3.

6. Under 49 U.S.C. § 44709, "[a] person adversely affected by [such] an order ... may appeal the order to the [NTSB]," which has the authority to "amend, modify, or reverse the order." 49 U.S.C. § 44709(d)(1) (1994).

motion to dismiss for lack of subject matter jurisdiction pursuant to Section 46110 and the FAA officials' motion to dismiss the *Bivens* claim on qualified immunity grounds. *Id.* at 379, 382.

The FAA officials then brought an interlocutory appeal of the district court's rejection of their qualified immunity defense pursuant to the collateral order doctrine. *Merritt I,* 187 F.3d at 266–67. Instead of addressing this qualified immunity issue, we *sua sponte* reviewed the district court's denial of the United States' motion to dismiss for lack of subject matter jurisdiction under Section 46110. Finding that Merritt's *Bivens* claim was "inescapably intertwined" with review of the nine-month suspension order, and that permitting that claim to proceed to trial in the district court "would result in new adjudication over the evidence and testimony adduced in the prior [administrative] ... hearing, the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ during the course of the proceedings under section 46110," we concluded that Section 46110 deprived the district court of jurisdiction over the *Bivens* claim. *Id.* at 271. (internal brackets and quotation marks omitted). We remanded the action "with instructions to dismiss Merritt's Fifth Amendment due process claims against the [FAA officials] for lack of subject matter jurisdiction, and for other proceedings not inconsistent with this opinion." *Id.* at 272.

On remand, the district court dismissed with prejudice the Fifth Amendment due

process claims against the three FAA officials. Finding that Merritt's "common law torts [action] against the United States [was] 'inescapably intertwined' with the Administrative Law Judge's review of the revocation order," the district court also *sua sponte* dismissed with prejudice Merritt's FTCA claim against the United States.[7] Merritt timely appealed.[8]

## DISCUSSION

We review the district court's Fed R. Civ. P. 12(b)(1) dismissal of the complaint against the United States *de novo.* *See Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 329 (2d Cir. 1997). In reviewing the grant of a motion to dismiss we must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *Id.*

In determining whether Section 46110 deprives the district court of jurisdiction over Merritt's FTCA claim, we must begin with the text of the statute. Section 46110(a) provides in relevant part that "a person disclosing a substantial interest in an *order* issued by the ... Administrator of the Federal Aviation Administration ... under [United States Code, Title 49, Subtitle VII, Part A] may apply for review of the *order* by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principle place of business." 49 U.S.C. § 46110(a) (emphasis added). Section

**7.** On April 3, 2000, the district court also dismissed Merritt's claims against the unknown John Doe defendants, employees of the FAA. On April 28, 2000, the district court entered final judgment in favor of all defendants.

**8.** Plaintiff Mary–Jo Merritt, Merritt's spouse, brought claims for loss of consortium and

violations of the notice requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), Pub.L. No. 99–272, 100 Stat. 82 (1985), concerning her right to continued participation in group health care plans subsequent to Merritt's termination. Plaintiffs do not appeal the district court's resolution of these claims.

46110(c) provides in relevant part that the courts of appeals have "exclusive jurisdiction to affirm, amend, modify, or set aside any part of the [FAA's] *order.*" 49 U.S.C. § 46110(c) (emphasis added). By its terms, Section 46110(c) precludes federal district courts from affirming, amending, modifying, or setting aside any part of such an order.

More broadly, statutes such as Section 46110(c) that vest judicial review of administrative orders exclusively in the courts of appeals also preclude district courts from hearing claims that are "inescapably intertwined" with review of such orders. *Merritt I,* 187 F.3d at 271. A claim is inescapably intertwined in this manner if it alleges that the plaintiff was injured by such an order and that the court of appeals has authority to hear the claim on direct review of the agency order. *City of Tacoma v. Taxpayers of Tacoma,* 357 U.S. 320, 336, 339, 78 S.Ct. 1209, 2 L.Ed.2d 1345 (1958).

*City of Tacoma* is the seminal Supreme Court case discussing the scope of exclusive jurisdiction provisions such as 46110(c). *See Williams Natural Gas Co. v. City of Oklahoma City,* 890 F.2d 255, 261 (10th Cir.1989) (stating that the "watershed case" interpreting such provisions is *City of Tacoma*). *City of Tacoma* concerned a license to construct a power project issued to the City of Tacoma by the Federal Power Commission (the "Commission") pursuant to Section 21 of the Federal Power Act, 16 U.S.C. § 791a *et seq. City of Tacoma,* 357 U.S. at 323, 78 S.Ct. 1209. The relevant exclusive jurisdiction statute, Section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b), provided that the courts of appeals "shall have exclusive jurisdiction to affirm, modify, or set aside" orders of the Commission. *Id.* at 335, 78 S.Ct. 1209. The State of Washington appealed to the Ninth Circuit the issuance of the license, arguing that the Commission lacked the authority to issue the license because, *inter alia,* "the City had not complied with applicable state laws nor obtained state permits and approvals required by state statutes." *Id.* at 328, 78 S.Ct. 1209. The Ninth Circuit eventually affirmed the issuance of the license. *Id.* While the State's appeal was pending in the Ninth Circuit, however, the City brought a state court action against, *inter alia,* the State seeking a judgment declaring valid an issuance of bonds to finance the power project. *Id.* at 329, 78 S.Ct. 1209. The State filed a cross-claim, "reasserting substantially the same objections [it] had made before the Commission, and that had been made in, and rejected by, the Court of Appeals." *Id.* After two rounds of direct review in the state courts, the Washington Supreme Court affirmed an order enjoining the City from proceeding to construct the project. *Id.* at 329–32, 78 S.Ct. 1209.

The United States Supreme Court reversed. *Id.* at 341, 78 S.Ct. 1209. The Court reasoned that because Section 313(b) of the Federal Power Act provides that "any party *aggrieved by the Commission's order* may have judicial review, upon all issues raised before the Commission ... by the Court of Appeals which 'shall have exclusive jurisdiction to affirm, modify or set aside such order in whole or in part,'" the provision

> necessarily preclude[s] *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review. Hence, upon judicial review of the Commission's *order,* all objections to *the order,* to the license [the order] directs to be issued, and to the legal competence of the licensee to execute [the order's] terms, must be made in the court of appeals or not at all.

*Id.* at 336, 78 S.Ct. 1209 (footnote omitted and emphasis added) (quoting 16 U.S.C. § 825l(b)). The Supreme Court added that the test for determining whether Section 313(b) precludes a district court from hearing a particular claim is not whether the claim was presented to and decided by a court of appeals, but rather whether the claim "could and should have been" presented to and decided by a court of appeals. *Id.* at 339, 78 S.Ct. 1209.[9]

In formulating *City of Tacoma*'s holding, it is important not to take out of context the Court's statement that Section 313(b) "necessarily preclude[s] *de novo* litigation between the parties of all issues inhering in the controversy, and all other modes of judicial review." Because the notion of issues "inhering in a controversy" is inherently vague, this statement could be taken to mean that district courts are precluded from hearing *any* issue that was raised or decided in a prior administrative proceeding. The "inhering in the controversy" statement, however, must be read in relation to the Supreme Court's other statements that, under Section 313(b), a party aggrieved by an administrative *order* may seek judicial review of the order in the courts of appeals, that the courts of appeals have exclusive jurisdiction to affirm, modify or set aside such *orders*, and that all objections to such *orders* must be made in the courts of appeals or not at all.

We thus read *City of Tacoma* as holding that Section 313(b) precludes (i) *de novo* litigation of issues inhering in a controversy over an administrative *order*, where one party alleges that it was *aggrieved by the order*, and (ii) all other modes of judicial review *of the order*. *Cf. Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (stating that exclusive jurisdiction provisions do not preclude district court consideration of claims that are " 'wholly collateral' to a statute's review provisions and outside the agency's expertise, particularly where a finding of preclusion could foreclose all meaningful judicial review") (internal quotation marks and citations omitted); *FCC v. ITT World Communications, Inc.*, 466 U.S. 463, 468, 104 S.Ct. 1936, 80 L.Ed.2d 480 (1984) (holding that "[l]itigants may not evade [28 U.S.C. § 2342(1) ] by requesting the District Court to enjoin action that is the outcome of the agency's *order* ") (emphasis added).

■ Similar caution must be taken with respect to our statement in *Merritt I* that Section 46110 precludes a district court from hearing a particular claim when "advancing [it] in district court would result in new adjudication over the evidence and testimony adduced in ... [the prior administrative proceeding], the credibility determinations made by the ALJ, and, ultimately, the findings made by the ALJ." 187

---

**9.** Citing *City of Tacoma*, we have stated that the test for determining whether an exclusive jurisdiction provision precludes a district court from hearing a given claim is "whether the administrative agency had the authority to decide th[e] issue" raised by the claim. *Cook v. Pan Am. World Airways, Inc.*, 771 F.2d 635, 641 (2d Cir.1985). Because review by a court of appeals of an administrative order is generally limited to the issues considered by the agency during the prior administrative hearing, this test will generally serve as a proxy for the *City of Tacoma* test. *See, e.g., City of Tacoma*, 357 U.S. at 336, 78 S.Ct. 1209 (noting that 16 U.S.C. § 825l(b) provides for judi-

cial review by the courts of appeals of "all issues raised before the [agency]"). *But see Gilbert v. NTSB*, 80 F.3d 364, 366–67 (9th Cir.1996) (holding that because "challenges to the constitutionality of a statute or a regulation promulgated by an agency are [generally] beyond the power or the jurisdiction of an agency," the court of appeals may consider such claims "regardless of whether the petition presented the claims to the [agency]," provided that they are presented to the court of appeals "in conjunction with a properly appealed adjudicative order from the [agency]").

F.3d at 271 (internal quotation marks omitted). Read in isolation, this statement could suggest that Section 46110 precludes a district court from hearing virtually any issue that was raised and considered in a prior administrative proceeding.[10] This statement, however, must be read in light of *City of Tacoma* and in connection with our other statement in *Merritt I* that the test is whether the claim is "inescapably intertwined with review of the [administrative] *order.*" *Id.* (internal quotation marks omitted) (emphasis added). This means that the mere overlap of evidence and testimony adduced in the two proceedings, or the mere overlap of findings made by an ALJ and by a district court judge are insufficient to preclude the district court from hearing a given claim. Such overlap is relevant only if the claim attacks the matters decided by the administrative order.

In *Merritt I*, we held that the district court lacked subject matter jurisdiction to hear Merritt's *Bivens* claim precisely because that claim challenged the ALJ's order suspending Merritt's pilot's certificate for nine months. We noted that Merritt complained of "the circumstances that gave rise to his suspension" and "the motivations and actions of those who allegedly engineered that suspension," and that his *Bivens* claim was "directed at the merits of a previous [administrative] adjudication." *Id.* at 272 (internal quotation marks omitted).[11]

■ In the present case, it is evident that Merritt's FTCA claim does not allege that he was injured or aggrieved by the ALJ's December 13, 1996 order suspending his pilot's certificate for nine months. Rather, Merritt claims that he was injured

10. Arguably, this is how the district court read it, and it is unquestionably how the government reads it in its brief.

11. *Accord Tur v. FAA,* 104 F.3d 290, 291, 292 (9th Cir.1997) (holding that Section 46110 precluded the district court from hearing plaintiff's *Bivens* claim because complaint alleged that FAA's order revoking his airman's certificate "depriv[ed] him of his property interest in his airman's certificate" and thus was "directed at the merits of a previous adjudication"); *Virginia v.. United States,* 74 F.3d 517, 519, 523 (4th Cir.1996) (holding that 42 U.S.C. § 7607(b)(1) precluded the district court from hearing Virginia's constitutional challenge to various provisions of the Clean Air Act because "the complaint thus leaves no doubt that Virginia seeks to reverse final EPA action" and "Virginia could have brought its constitutional claims directly before this court"); *Mace v. Skinner,* 34 F.3d 854, 858 (9th Cir.1994) (holding that 49 U.S.C. § 1486 did not preclude pilot's broad constitutional challenge to FAA authority and procedures because "his complaint is not based on the merits of any particular revocation order"); *Green v. Brantley,* 981 F.2d 514, 518 (11th Cir.1993) (holding that 49 U.S.C. § 1486 precluded pilot's *Bivens* claim against FAA employees because the claim "was based upon the FAA's termination of his [Designated Pilot Examiner] certificate"); *Williams Natural Gas,* 890 F.2d at 264 (holding that Section 19(a) of the Natural Gas Act, 15 U.S.C. § 717r(a), precluded the district court from hearing preemption challenge to order of Federal Energy Regulatory Commission ("FERC") because plaintiff "could have and should have raised the preemption issue before FERC"); *Environmental Defense Fund, Inc. v. EPA,* 485 F.2d 780, 783 (D.C.Cir.1973) (holding that Section 135b(d) of the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 135 *et seq.* (1970), precluded challenge—based on provisions of the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 *et seq.*—to EPA order suspending use of DDT because there is no "authority for the proposition that NEPA statements can be litigated apart from the proceeding adjudicating the validity of the underlying FIFRA order"); *Oling v. Air Line Pilots Ass'n,* 346 F.2d 270, 278 (7th Cir.1965) (holding that Section 1486 precluded district court from hearing pilots' request for injunction setting aside integrated seniority list approved by CAB, after pilots had asked for essentially the same relief in hearing before the CAB).

by the failure of FAA employees to provide him with accurate weather information prior to takeoff on June 24, 1996.

Nor could Merritt raise his FTCA claim in an appeal of the order suspending his pilot's certificate to this Court. Merritt asserted at oral argument—and the Government agreed—that there is "no subject matter jurisdiction in the NTSB court to hear negligence claims" against the FAA. This assertion is supported by review of the statute that vests the NTSB with the authority to review FAA orders, namely, 49 U.S.C. § 44709 (1994). Section 44709 vests the FAA with authority (i) to "reexamine an airman holding a [pilot's] certificate," *id.* § 44709(a), and (ii) to "issue an order amending, modifying, suspending, or revoking—(1) any part of [such] a certificate . . . if—(A) [it] decides . . . that safety in air commerce or air transportation and the public interest require that action," *id.* § 44709(b). Section 44709(d) gives the NTSB authority, upon the appeal of such an order, to "amend, modify, or reverse the order." 49 U.S.C. § 44709(d)(1). These provisions indicate that the entire focus of such review proceedings is whether the suspension or revocation of a pilot's certificate was warranted; no provision is made for claims by the pilot that the FAA was responsible for the incident that led to the suspension of his certificate. Indeed, reported decisions of the NTSB affirmatively state that the NTSB has no authority to hear such claims against the FAA in a Section 44709 proceeding. *See FAA v. Smedley*, No. SE–15798, 2000 WL 576184, at *3 (N.T.S.B. Apr. 6, 2000) (stating that "unlike civil cases and juries and a lot of tort cases, [the NTSB in a Section 44709 proceeding lacks authority to] . . . compare negligence. The FAA could be 70 percent negligent and the pilot could be 30 percent negligent, but if there's a regulatory allegation shown, the pilot is going to lose because [the NTSB] can't hold the FAA in any way responsible"); *FAA v. Tate*, No.

SE–11734, 1991 WL 345903, at *2–*3 (N.T.S.B. Sept. 13, 1991) (same); *cf. Beins v. United States*, 695 F.2d 591, 598 (D.C.Cir.1982) (holding that Section 1486 did not preclude the district court from hearing pilot's FTCA claim against the FAA because, *inter alia,* "an administrative appeal determines whether the agency action was in excess of statutory jurisdiction and authority, without observance of procedure required by law, contrary to constitutional right and power, arbitrary and capricious, or otherwise not in accordance with law, 5 U.S.C. § 706; these determinations are distinct conceptually from a finding of negligence, the linchpin of the FTCA"). Hence, because our review of an NTSB order is generally limited to the issues considered by the NTSB, 49 U.S.C. § 44110(b), Merritt could not raise his FTCA claim in an appeal of the order suspending his pilot's certificate to this Court.

Furthermore, as the Court of Appeals for the District of Columbia Circuit explained in *Beins,* consideration of the nature and purpose of the FTCA provides an independent basis for concluding that FTCA claims are not precluded by Section 46110:

> On its face the FTCA provides a remedy for negligent acts of government employees; none of the several explicit exceptions in the FTCA exempts negligent acts solely because the legal validity of the employee's actions is appealable on other grounds to other administrative bodies or eventually to the courts through the Administrative Procedure Act. . . . "The [FTCA] was the product of nearly thirty years of congressional consideration and was drawn with numerous substantive limitations and administrative safeguards."
>
> . . . .
>
> [Given the] considerable care [taken] by Congress in crafting when and how

the FTCA would be available to a claimant ... we are disinclined to add a jurisdictional exception....

*Id.* at 597–98 (quoting *Indian Towing Co. v. United States,* 350 U.S. 61, 68, 76 S.Ct. 122, 100 L.Ed. 48 (1955)).[12]

■ A final consideration that weighs against the district court's interpretation of Section 46110 as depriving it of jurisdiction to hear Merritt's FTCA claim is that it yields several unreasonable consequences—the first two of which the government at oral argument acknowledged and urged us to accept. Whenever possible, however, we interpret statutes to avoid unreasonable results. *See Dougherty v.. Carver Fed. Sav. Bank,* 112 F.3d 613, 624 (2d Cir.1997) (citing *Am. Tobacco Co. v. Patterson,* 456 U.S. 63, 71, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982)). First, under the district court's interpretation, although every passenger of flight 6500 could bring an FTCA claim for injuries allegedly suffered during the June 24, 1996 takeoff incident, Merritt could not—even though his allegations of FAA negligence, like the allegations of FAA negligence that could be made by the passengers, are directed against FAA acts and omissions that occurred on June 24, 1996, not against the FAA's suspension of his pilot's certificate. *See Tinkler v. United States,* 982 F.2d 1456 (10th Cir.1992) (presupposing that

district court had jurisdiction to hear FTCA claim brought by wife of aircraft passenger killed as a result of alleged failure of FAA employee to furnish weather information to the pilot of the aircraft). Second, even if the ALJ had found that Merritt bore no responsibility whatsoever for the June 24, 1996 takeoff incident, the district court's interpretation of Section 46110 would nonetheless unjustly bar him from bringing an FTCA claim in district court. Third, while the district court's interpretation precludes Merritt from bringing an FTCA claim for the injuries he suffered during the takeoff incident, it would have permitted Merritt's estate to bring an FTCA claim had Merritt died as a result of the takeoff incident. *See Budden v. United States,* 15 F.3d 1444 (8th Cir.1994) (presupposing that district court had jurisdiction to hear FTCA claim brought by estate of deceased pilot alleging that pilot had been killed as a result of failure of FAA employee to fully notify pilot of forecasted adverse weather conditions during a pre-flight briefing).

For the reasons discussed, we hold that Section 46110 does not preclude the district court from hearing Merritt's FTCA claim.[13]

■ Finally, we caution that our holding has no bearing on the question of whether the ALJ's determination of particular issues raised in the administrative

**12.** We do not, however, endorse *Beins'* holding that Section 1486 did not preclude the district court from hearing the plaintiff's FTCA claim that "the FAA had negligently denied him airman medical certificates on five occasions." 695 F.2d at 597. Because that claim alleged that the plaintiff was harmed by the agency order, it would arguably be precluded by Section 1486.

**13.** We note that our holding is not inconsistent with *Roundtree v. United States,* 40 F.3d 1036 (9th Cir.1994), in which the Ninth Circuit held that, under Section 46110, "Roundtree cannot use [his] FTCA [claim] as a means

of obtaining review of the particular orders of suspension in this case." *Id.* at 1038. Unlike Merritt's FTCA claim—but like the *Bivens* claim we considered in *Merritt I*—Roundtree's FTCA claim was not a claim for injuries suffered as a result of FAA actions unrelated to a suspension order. Rather, "he asserted that the United States was liable to him under the FTCA because the FAA and its employees had ... negligently construed the Federal Aviation Act to permit them to revoke or suspend certificates, whereas they had no authority to do so." *Id.* at 1037–38.

hearing may be given issue preclusive effect by the district court upon remand. The jurisdictional preclusion effected by statutes such as Section 46110 (as interpreted herein) is distinct from the doctrine of issue preclusion or collateral estoppel. Issue preclusion applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 593 (2d Cir.1991). Statutes such as Section 46110, in contrast, preclude district courts from deciding issues that "could and should have been" raised in an administrative proceeding or at least in a court of appeals, not merely those that were actually considered and necessarily decided in the administrative proceeding. *City of Tacoma*, 357 U.S. at 339, 78 S.Ct. 1209.[14]

## CONCLUSION

For the reasons discussed, the district court's judgment dismissing Merritt's

FTCA claim for lack of subject matter jurisdiction is reversed, and the case is remanded for further proceedings consistent with this opinion.

---

14. In *Haerum v. Air Line Pilots Ass'n*, 892 F.2d 216, 220 (2d Cir.1989), we stated that the test for determining whether an exclusive jurisdiction provision precludes the district courts from hearing a claim is whether the "issue [was] actually litigated and necessarily decided" in a prior administrative hearing. This statement was mere dicta, however, because we decided the case on other grounds. *Id.* at 222.

Similarly, in *Dougherty*, 112 F.3d at 620, we stated that "[s]ubject matter jurisdiction to decide an issue raised in [the district court] is lacking in the district court only when (1) the [agency], acting within its authority, has actually considered and decided the same issue, and (2) the resolution of that issue is essential to the agency's decision." In deciding whether the exclusive jurisdiction statute in question precluded the district court from hearing plaintiffs' claims, however, we focused on

whether the agency in question had the authority to consider these claims. *Id.* at 621–23.

In any event, our judgment here that the district court has subject matter jurisdiction to hear Merritt's FTCA claim is entirely consistent with *Dougherty*'s "collateral estoppel" test for determining whether an exclusive jurisdiction statute divests a district court of jurisdiction over a given claim. As noted, in a Section 44709 proceeding, the NTSB lacks authority to hold the FAA responsible for harm. *Smedley*, 2000 WL 576184, at *3. The central issue raised by Merritt's FTCA claim, in contrast, is whether the FAA was responsible for the June 24, 1996 takeoff incident. Hence, it cannot be the case that the NTSB, "acting within its authority, has actually considered and decided the same issue" that is raised by Merritt's FTCA claim in the district court. *Dougherty*, 112 F.3d at 620.