Nicholas O. RUSSO, Jr., Plaintiff,

v.

James GLASSER, Assistant U.S. Attorney, T. David Plourde, Assistant U.S. Attorney, Kevin Kline, Special Agent, FBI, and Marcus Brown, Diversionary Investigator, DEA, and United States of America Defendants.

No. CIV.3:03CV370 (PCD).

United States District Court, D. Connecticut.

Aug. 5, 2003.

James S. Brewer, West Hartford, CT, for Nicholas O. Russo, Jr., plaintiff.

William A. Collier, U.S. Attorney's Office, Hartford, CT, for James Glasser, Asst USA Atty, T. David Plourde, Asst USA Atty, Kevin Kline, Special Agent, FBI, Marcus Brown, Diversionary Investigator, DEA, USA, defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS [Doc. No. 17]

DORSEY, Senior District Judge.

On June 30, 2003, this Court granted Defendants' Motion to Dismiss [Doc. No. 17] absent opposition. Soon thereafter, the Court received Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [Doc. No. 19], which was filed on June 30, 2003, dated June 20, 2003, and included a certification that it was mailed on June 27, 2003. Previously, this Court had granted at extension of time "nunc pro tunc," requiring that Plaintiff file his response on or before June 20, 2003. Notwithstanding Plaintiff's unexplained delinquent filing of his response or his failure to comply with this Court's Supplemental Order [Doc. No. 3], in the interest of justice this Court has construed Plaintiff's response [Doc. No. 19] as a Motion to Reconsider the Ruling granting Defendants' Motion to Dismiss [Doc. No. 20].

### I. Background [1]

Plaintiff has been employed as a police officer for the City of Hartford Police Department since 1981, was promoted to Detective in 1994, and was assigned to the Federal Violent Crimes Unit–Hartford ("FGTF") since June 1995. The FGTF is comprised of Federal Bureau of Investigation ("FBI") Agents and Hartford Police Officers (deputized U.S. Marshalls), and brings joint investigations/prosecutions by Federal and State law enforcement.

On or about 1997, Plaintiff, as a Hartford Police Officer and deputized U.S. Marshall, was ordered by John Durham, Deputy U.S. Attorney, to report to Defendants James Glasser and Kevin Kline to assist them with a police corruption probe including the theft of drugs, money, and weapons by Hartford Police Officers and Supervisors. During the times relevant to Plaintiff's complaint, Glasser was Assistant U.S. Attorney for the District of Connecticut (and at certain times Chief of the Criminal Division), and Kline was a Special Agent of the FBI. On or about July and September 1997, Plaintiff provided Defendants Glasser and Kline with information regarding such police corruption.

On or about September 1997, Defendants Glasser and Kline ordered Plaintiff to seek the aid of former Hartford Police Detective (who was then Inspector for the Connecticut Chief States Attorney) Stephen Kumnick. Plaintiff met with Kumnick on or about October 15, 1997. Shortly after this meeting Kumnick notified potential targets of the corruption probe, including Detective James Rovella, who then informed other subjects, including Detectives Robert Lawlor and Michael Edelwich and Sergeants Christopher Lyons and Steven Miele. On or about October 31, 1997, Lawlor, Lyons, and Edelwich met with Hartford Police Chief Joseph Croughwell, who immediately called Plaintiff and conveyed a physical threat regarding his involvement in the federal investigation of the Hartford Police Department. At this time Crough-

**1.** The facts are taken from Plaintiff's complaint, and any documents incorporated by reference, and are accepted as true for purposes of the motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

well told Plaintiff that "I have two detectives here who want to kick your fucking ass," and ordered him to take a lie detector test regarding his involvement with the federal corruption investigation.

Plaintiff notified Kline of the threat and repeatedly asked for protection, but was rebuffed. Subsequently, Plaintiff became the subject of a criminal investigation, prosecution, and arrest for illegally obtaining a prescription pain killer (Tylenol 3). Kline and Glasser told their supervisor, John Durham, that Plaintiff had contacted Kumnick without authorization.

On September 17, 2002, and November 2, 2002,[2] Plaintiff alleges that Glasser and Kline, respectively, falsely testified about Plaintiff's involvement in the federal corruption investigation, and refused to answer questions, which ultimately thwarted Plaintiff's preparation of this lawsuit. On these dates, Plaintiff alleges that Defendant T. David Plourde, Assistant U.S. Attorney for the District of New Hampshire, improperly colluded with Glasser and Kline in their refusal to answer questions and false testimony.

Despite being recused from the Russo litigation, in September 2002 Glasser responded to discovery demands for FBI and U.S. Attorney records and personally redacted large portions of information.

Plaintiff alleges that during the investigation, Glasser and Kline learned of numerous acts of illegal conduct and civil rights violations, including information about a murder suspected to have been committed by Hartford Police Officers. Although Glasser and Kline knew of illegal drug possession by several members of the Hartford Police Department, including Sergeants Lyons and Miele and Detectives Lawlor and Edelwich, they did not investigate such possessions. Kline was aware of Lawlor and Edelwich's possession of over 150 bags of heroin, 25 bags of rock cocaine, cocaine, marijuana, glassine envelopes, lactose cutting agent, and other paraphernalia. Kline informed former Hartford Deputy Chief Jeffrey Flaherty that Flaherty's brother, a police officer in Middletown, Connecticut, was suspected of drug distribution and was observed entering and exiting a drug dealing establishment. Flaherty informed his brother of this contact. After drugs were found in Lawlor and Edelwich's possession, Chief Croughwell assigned them to the Federal Gang Task Force. Plaintiff alleges that despite using him as an informant and witness, Glasser and Kline took no action to protect him against physical and other threats made by Hartford Police Officers.

In Count One, which is a hodgepodge of claims, Plaintiff alleges a § 1983 violation against all Defendants. He alleges that the conduct of Glasser and Kline has resulted in a denial of access to the courts for him to bring the underlying claims of false arrest, unreasonable search, violation of substantive Due Process, invasion of privacy, and intentional infliction of emotional distress against Glasser, Kline, Plourde, and Brown. Count One also alleges that the conduct of Defendants denied Plaintiff his right to free speech and association and to seek redress from the government without retaliation as guaranteed to him by the First Amendment to the United States Constitution. Plaintiff alleges that Defendants deprived him of the privileges and immunities guaranteed to him as a United States citizen. He alleges that Defendants' actions were willful, intentional, and done in spite of their

---

**2.** Defendants contend that Kline actually gave testimony on November 20, 2001, in the context of his deposition in the Russo cases consolidated and pending before the Honorable Janet C. Hall (3:97cv2380).

actual knowledge or reckless disregard for his constitutional rights. Count One alleges that Plaintiff has been irreparably harmed and publicly humiliated, and has suffered severe emotional harm and distress and other undisclosed physical injuries. Plaintiff further alleges that Defendants' actions constitute a denial of his substantive due process rights and his equal protection rights as guaranteed by the Fourteenth Amendment. Count One alleges the following injuries: loss of dignity, humiliation, and severe emotional suffering; loss of privacy within Plaintiff's home; anxiety, fear, and trauma; fear of physical attacks; lost income; and damage to his name and reputation.

Count Two alleges that Defendant Brown violated 42 U.S.C. § 1983 when he searched and seized Plaintiff's medical records without a warrant or other legal process, in violation of the Fourth Amendment.

Count Three alleges a claim of intentional infliction of emotional distress under the Federal Tort Claims Act against Defendant United States.[3]

Plaintiff seeks the following relief: (1) compensatory money damages in the amount of ten million dollars ($10,000,000); (2) punitive damages pursuant to Connecticut common law; (3) attorneys' fees and costs as provided by 42 U.S.C. § 1988 and any other applicable law; (4) punitive damages pursuant to 42 U.S.C. § 1983; (5) lost and future lost wages; and (5) such other relief the Court may deem appropriate.

## II. Standard

A motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6) is properly granted when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 69 (2d Cir.2001) (internal quotation marks omitted). A motion to dismiss must be decided on the facts as alleged in the complaint. *Merritt v. Shuttle, Inc.*, 245 F.3d 182, 186 (2d Cir.2001). All allegations are assumed to be true and are considered in a light most favorable to the non-movant. *Manning v. Util. Mut. Ins. Co.*, 254 F.3d 387, 390 n. 1 (2d Cir.2001). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990). In its review of a 12(b)(6) motion to dismiss, a court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." *Samuels v. Air Transport Local 504*, 992 F.2d 12, 15 (2d Cir.1993).

## III. Analysis

### A. General Claims

#### 1. Sovereign Immunity

■ Defendants argue that to the extent Plaintiff sues them in their official capacity, the suit is barred by sovereign immunity.

■ It is well settled that suits filed against federal government employees acting in their official capacities must be construed as suits against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir.1994);

---

**3.** On June 10, 2003, the Court issued an Order of Substitution, whereby the United States was substituted for the individual Defendants as to Plaintiff's state law claims. Accordingly, Count Three is construed as being against Defendant United States.

*Owens v. Fulton County,* 877 F.2d 947, 951 n. 5 (11th Cir.1989) (suit against defendant in his official capacity synonymous with claim against sovereign or entity for whom defendant acts). The doctrine of sovereign immunity, however, bars an action for damages against the United States. *See Mack v. United States,* 814 F.2d 120, 122–23 (2d Cir.1987); *Keene Corp. v. United States,* 700 F.2d 836, 838 n. 3, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). The United States may be sued only to the extent that it has waived sovereign immunity. *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Here, Plaintiff does not cite to any legal authority indicating that the United States has waived its sovereign immunity.[4]

Accordingly, any claim for money damages against the individual Defendants in their official capacities are barred by sovereign immunity and dismissed.

### 2. Jurisdiction Pursuant to 28 U.S.C. §§ 1343 and 1357

Defendants argue that 28 U.S.C. §§ 1343 and 1357 do not vest this Court with jurisdiction over Plaintiff's claims.[5] Plaintiff does not respond to this argument.

■ Plaintiff's complaint does not identify under which provision of § 1343 he asserts jurisdiction. The Court construes Plaintiff's complaint as seeking jurisdiction pursuant to § 1343(a)(1) & (4), which provide as follows:

The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: (1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in [42 USCS § 1985]; . . . (4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

28 U.S.C. § 1343. However, there is no jurisdiction under § 1343(a)(1) because, as discussed below, Plaintiff fails to state a claim for conspiracy. There is no jurisdiction under § 1343(a)(4) because, as Defendants argue, Plaintiff has not alleged any cognizable violations of federal statutes pertaining to civil rights.[6]

■ 28 U.S.C. § 1357 provides district courts with original jurisdiction over civil actions brought to recover damages for injuries sustained when a plaintiff has acted to "protect[ ] or collect[ ] . . . any of the revenues, or to enforce the right of citizens of the United States to vote in any State." Nothing in Plaintiff's complaint supports jurisdiction under § 1357.

Accordingly, there is no jurisdiction pursuant to 28 U.S.C. §§ 1343 and 1357.

### 3. 42 U.S.C. § 1983 Claims

■ Plaintiff's claims in Counts One and Two are predicated under the caption "violation of § 1983." Defendants argue that Plaintiff's § 1983 claims must fail because a prerequisite for relief under § 1983 is

---

4. The United States' limited waiver of sovereign immunity under the Federal Tort Claims Act is discussed below.

5. Defendants do not challenge Plaintiff's reference to jurisdiction under 28 U.S.C. § 1331, the Federal Tort Claims Act, and the various constitutional provisions cited by Plaintiff.

6. Plaintiff's complaint refers to two federal statutes, the Federal Tort Claims Act and 28 U.S.C. § 1983. The Federal Tort Claims Act is not a civil rights statute, and, as discussed *infra,* Plaintiff fails to state a claim under § 1983.

that a defendant have acted under authority of *state* law, and that an action under § 1983 cannot lie against federal officers. *Kingsley v. Bureau of Prisons,* 937 F.2d 26, 30 n. 2 (2d Cir.1991). Plaintiff does not contest that the individual Defendants were acting under federal law, and accordingly all § 1983 claims against them are dismissed.

#### 4. *Bivens* Claims and Statute of Limitations

Because § 1983 does not support a claim against federal officers acting under federal law (as noted above), Defendants construe Plaintiff's claims against the individual Defendants as having been brought pursuant to *Bivens v. Six Unknown Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 389, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In his reply brief, Plaintiff agrees with this construal.

In a *Bivens* action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. *See Carlson v. Green,* 446 U.S. 14, 18, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). Such an action, however, must be brought against the federal officers involved in their individual capacities. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994).

Conn. Gen.Stat. § 52–577 sets forth the statute of limitations for Plaintiff's claims against the individual Defendants. *See Lounsbury v. Jeffries,* 25 F.3d 131, 134 (2d Cir.1994) (applicable state statute of limitations for actions under § 1983 is Conn. Gen.Stat. § 52–577); *Chin v. Bowen,* 833 F.2d 21, 23–24 (2d Cir.1987) (state statute of limitations for § 1983 and *Bivens* claims are the same). Section 52–577 provides that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." CONN. GEN. STAT. § 52–577.

Plaintiff's complaint was filed on March 3, 2003, fixing the limitations period as commencing on March 3, 2000. Accordingly, Plaintiff's claims arising before March 3, 2000 are barred by the statute of limitations and are **dismissed.**[7]

#### 5. Fourteenth Amendment Claims

Defendants argue that the Fourteenth Amendment to the United States Constitution cannot be a basis for monetary relief where an action alleging constitutional violations is against federal agents acting under color of federal law. The Fourteenth Amendment applies to state action and not federal action. U.S. CONST. AMEND. XIV § 1; *see also Merritt v. Shuttle, Inc.,* 13 F.Supp.2d 371, 382 (E.D.N.Y.1998); *Mahoney v. Nat'l Org. For Women,* 681 F.Supp. 129, 132 n. 6 (D.Conn.1987). Plaintiff does not allege that Defendants acted under anything other than federal law, and accordingly Plaintiff's causes of actions based on the Fourteenth Amendment are dismissed.

### B. Count One

Count One of Plaintiff's complaint is not a model of clarity. Apparently, the crux of this Count is that (1) Defendants Glasser and Kline falsely testified under oath and gave evasive answers to questions, (2) Defendant Glasser improperly redacted documents, and (3) Defendant Plourde "colluded" with these Defendants in giving false and evasive testimony. He alleges that

---

**7.** As discussed elsewhere in this Ruling, to the extent Plaintiff alleges behavior by Defendants after March 3, 2000, he fails to state a claim for which relief can be granted for the claims in Count One.

this conduct violated his First Amendment right of access to the courts. He also alleges conspiracy and failure to investigate.

### 1. Denial of Access to the Courts Claim

Plaintiff alleges that Defendants Glasser and Kline denied his access to the courts to bring his underlying claims of false arrest, unreasonable search, violation of substantive Due Process, invasion of privacy, and intentional infliction of emotional distress. He alleges vaguely and in conclusory fashion that on September 17, 2002 and on or about November 2, 2002 Glasser and Kline respectively "refused to answer questions that resulted in frustrating plaintiff in preparing and filing claims set forth in this lawsuit."

"The right of access to the courts ... assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). "It is well established that all persons enjoy a constitutional right of access to the courts, although the source of this right has been variously located in the First Amendment right to petition for redress, the Privileges and Immunities Clause of Article IV, section 2, and the Due Process Clauses of the Fifth and Fourteenth Amendments." *Monsky v. Moraghan,* 127 F.3d 243, 246 (2d Cir.1997).[8]

There are two general types of denial-of-access claims. *See Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 2185, 153 L.Ed.2d 413 (2002). One type aims to eliminate "systemic official action [that] frustrates a plaintiff or plaintiff class

in preparing and filing" ongoing or future suits. *Id.* at 413, 122 S.Ct. 2179. The second type is designed to compensate a plaintiff for wrongful official conduct that led the plaintiff to miss an opportunity to bring suit. *See id.* at 413–14, 122 S.Ct. 2179. In either case, "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong ... it follows ... [that] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet to be brought." *Id.* at 414–15, 122 S.Ct. 2179. "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416, 122 S.Ct. 2179 (citation omitted).

Here, Plaintiff alleges that Defendants Glasser, Kline, and Plourde frustrated his access to the courts by giving false and evasive testimony. He alleges the following underlying causes of action: (1) false arrest, (2) unreasonable search, (3) violation of substantive Due Process, (4) invasion of privacy, and (5) intentional infliction of emotional distress. The complaint does not indicate any intelligible allegations of false arrest. Plaintiff does not set forth intelligible or well-pleaded allegations demonstrating deprivation of a cognizable liberty or property interest by Defendants sufficient to support his substantive Due Process claim. To the extent that Plaintiff raises a claim for unreasonable search and invasion of privacy, he apparently brings such a claim in Count Two of this complaint against Defendant Brown. Moreover, he raised similar

---

**8.** Plaintiff apparently argues that his right of access to the courts under the First Amendment has been violated. (*See e.g.* Compl.

¶¶ 35, 37). Beyond this allegation, any other claims Plaintiff purports to assert under the First Amendment are unintelligible.

claims against Defendant Brown in state court. *See Connecticut v. Russo,* 259 Conn. 436, 790 A.2d 1132 (2002).[9] Consequently, it is not apparent how he was denied access to the courts to bring such claims.[10] Finally, Plaintiff's allegation of intentional infliction of emotional distress is insufficient to support a denial of access to the court claim. *See Monsky,* 127 F.3d at 247 (plaintiff's emotional distress claims "are not the type of actual injury that gives rise to a constitutional claim of denial of access to the courts").[11] Accordingly, Plaintiff's claim regarding denial of access to the courts is **dismissed.**[12,13]

## 2. Conspiracy

█ Plaintiff apparently alleges that Defendant Plourde engaged in conspiracy when he "colluded with both Glasser and Kline [on September 17, 2002 and November 2, 2002] in their refusal to answer questions about false testimony." (Compl.¶ 25). Defendants argue that Plaintiff's vague and conclusory conspiracy allegations are insufficient to state a claim. As noted above, Plaintiff in conclusory fashion merely recites the facts and summarily states that "these facts demonstrate ... a claim of conspiracy."

"A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.) (per curiam) (citations omitted). "[D]iffuse and expansive allegations [of conspiracy] are insufficient," *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977) (per curiam), and the complaint should plead "details of time and place and the alleged effect of the conspiracy," *Dwares v.*

9. The Court takes judicial notice of this ruling.

10. To the extent Plaintiff alleges that a purported delay caused by Defendants' actions forms the basis of his claim of denial of access to the courts, his claim lacks merit. *See Sosna v. Iowa,* 419 U.S. 393, 410, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

11. Moreover, Plaintiff alleges a separate intentional infliction of emotional distress claim in Count Three of the complaint.

12. To the extent Plaintiff argues that Defendant Glasser's alleged improper redaction of discovery documents denied him access to the Courts, his claim lacks merit. On January 10, 2003, in another of Plaintiff's actions pending in another federal district court the Honorable Janet C. Hall issued a ruling denying Plaintiff's motion to compel, in which Plaintiff challenged Glasser's redactions. *See* Ruling Re: Pl. Mot. to Compel, 3:97cv2380(JCH) [Doc. No. 365]. It is not apparent how the redactions have frustrated Plaintiff's access to the courts.

13. To the extent that Plaintiff alleges that Defendants Glasser and Kline's false and evasive testimony impeded his access to the Courts, his claim lacks merit. The common law doctrine of absolute witness immunity shields witnesses from civil rights claims. *Briscoe v. LaHue,* 460 U.S. 325, 334, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). This immunity extends to all persons, whether governmental, expert,. or lay witnesses, integral to the trial process. *Id.* at 335, 103 S.Ct. 1108. The rationale for absolute witness immunity stems from the concern that witnesses fearing civil liability for their testimony might be reluctant to testify or might give distorted testimony. *See Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Protecting witnesses from liability encourages witnesses to testify and furthers the fact-finding and truth-seeking process of the courts. *Briscoe,* 460 U.S. at 333–35, 103 S.Ct. 1108. "The penalty for false testimony is ... a potential prosecution for perjury." *Jones v. Cannon,* 174 F.3d 1271, 1281 (11th Cir.1999). Thus, the doctrine of absolute immunity "is one of immunity from civil liability, and of course does not protect a witness from prosecution for perjury." *Id.* at 1286–87 n. 9. Here, Plaintiff has filed a civil suit, and the individual Defendants are protected by absolute witness immunity from civil liability regarding Plaintiff's allegations of false testimony.

*New York,* 985 F.2d 94, 100 (2d Cir.1993) (citation omitted). Furthermore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *De Jesus v. Sears, Roebuck & Co., Inc.,* 87 F.3d 65, 70 (2d Cir.1996) (internal quotation marks omitted).

Here, Plaintiff's claims of conspiracy are vague and conclusory, and accordingly are **dismissed**.

### 3. Failure to Investigate

 Plaintiff also alleges that Defendants Glasser and Kline, "despite their knowledge" of illegal drug possession by various Hartford Police Officers, "purposely and deliberately neglected their duty by failing to further investigate." (Compl.¶ 29).

"[T]here is no federal right to have criminal wrongdoers prosecuted." *Marsh v. Kirschner,* 31 F.Supp.2d 79, 81 (D.Conn. 1998) (citations omitted). *See also Stone v. Department of Investigation,* 91 Civ. 2471, 1992 U.S. Dist. LEXIS 1120, at *5 (S.D.N.Y. Feb. 5, 2002) ("There is ... no constitutional right to an investigation by government officials") (citing *Gomez v. Whitney,* 757 F.2d 1005 (9th Cir.1985); *Chapman v. Musich,* 726 F.2d 405 (8th Cir.1984); *Byrd v. Dept. of Probation,* 1991 U.S. Dist. Lexis 3706 (S.D.N.Y.1991)); *Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another"). Thus, even if Plaintiff's allegation concerning a failure to investigate was true, it would not state a claim for relief, and accordingly is dismissed.

### 4. Sufficiency of Count One of the Complaint

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Pleadings must give fair notice of the claims alleged to afford the adverse party the opportunity to answer and prepare for trial. *Simmons v. Abruzzo,* 49 F.3d 83, 87 (2d Cir.1995). Dismissal of a complaint is proper when it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). As noted above, plaintiffs may not circumvent dismissal by disguising conclusory allegations or legal conclusions as facts. *De Jesus,* 87 F.3d at 70.

Accordingly, to any extent that Plaintiff purports to allege claims under Count One against any Defendants which are not addressed in this Ruling, such claims are unduly vague and unintelligible as to preclude further discussion, and are hereby **dismissed**.

### C. Count Two

 Count Two alleges that Defendant Brown violated 42 U.S.C. § 1983 when he searched and seized Plaintiff's medical records without a warrant or other legal process, in violation of the Fourth Amendment. Defendants argue that the three-year statute of limitations set forth in Conn. Gen.Stat. § 52–577 bars Count Two. Plaintiff does not respond to this argument.[14]

Because Defendants refer to documents outside of the pleadings (a declaration of

---

14. In their initial memorandum supporting their motion to dismiss [Doc. No. 18], Defendants argue that Count Two is collaterally estopped by *State of Connecticut v. Russo,* 259 Conn. 436, 790 A.2d 1132 (2002), *cert. denied sub nom. Russo v. Connecticut,* 537 U.S. 879, 123 S.Ct. 79, 154 L.Ed.2d 134 (2002). In *State of Connecticut v. Russo,* the Court held that there was no Fourth Amendment violation when Brown obtained Russo's prescrip-

Marcus Brown), this issue cannot be resolved on a motion to dismiss, and accordingly the Court converts this into a motion for summary judgment on this discrete issue (Count Two). *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (Under Fed.R.Civ.P. 12(b), where a party refers to documents outside the pleadings the court may either exclude the extrinsic documents or convert the motion into a summary judgment motion and "give the parties an opportunity to conduct appropriate discovery and submit the additional supporting material contemplated by [Fed.R.Civ.P.] 56").

Accordingly, Defendants shall serve Plaintiff with their supplemental memorandum on or before August 12, 2003. Plaintiff shall serve Defendants with his memorandum in on or before August 22, 2003. Defendants shall file their supplemental memorandum and plaintiff's opposition, along with any reply brief if relevant, with this Court on or before September 3, 2003. All filings shall comply with the service/filing requirements this Court's Supplemental Order.

### D. Count Three

Count Three invokes jurisdiction under the Federal Tort Claims Act ("FTCA") and alleges intentionally inflicted emotional distress upon Plaintiff. Defendants argue that Count Three must be dismissed because Plaintiff failed to exhaust his administrative remedies under the FTCA. Plaintiff does not respond or cite to any contrary legal authority.

■ The United States may be sued only to the extent that it has waived sovereign immunity. *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). The FTCA constitutes a limited waiver, permitting suit only on claims that have been finally denied by the relevant agency in writing or that have not received a final determination within six months after being filed. *See* 28 U.S.C. § 2675(a). A claimant must request a specific dollar sum. *Keene Corp. v. United States*, 700 F.2d 836, 841–42 (2d Cir.1983). In addition, a tort claim is barred if not "presented in writing to the appropriate federal agency within two years" after it accrues. 28 U.S.C. § 2401(b).

■ Here, Plaintiff has not alleged that he has exhausted his administrative remedies as required before bringing claims under the FTCA. *See McNeil v. United States*, 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies").

Accordingly, Count Three is **dismissed**.

### IV. Conclusion

The Ruling granting Defendants' Motion to Dismiss absent opposition [Doc. No. 20] is hereby **vacated**. For the reasons stated herein, Counts One and Three are **dismissed**. Count Two is converted into motion for summary judgment, and all supporting memoranda shall be filed as stated above.

SO ORDERED.

tion records from pharmacists without a warrant and without Russo's consent. *Id.* at 467, 471–73, 790 A.2d 1132. In his reply memorandum, Plaintiff contends that *State v. Russo* is inapposite because in the present complaint, he challenges not the seizure of records by the pharmacists, but instead by Dr. Buccieri, Plaintiff's physician (although this is not clear from the complaint). Defendants concede that *State v. Russo* did not address the seizure of medical records by Dr. Buccieri. Accordingly, the Court need not address this argument.